Edward R. GODFREY and Georgia G. Godfrey, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15386.

United States Court of Appeals Sixth Circuit.

July 29, 1964.

Paul J. Buckley, Dayton, Ohio, for petitioners.

Edward L. Rogers, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before CECIL, and O'SULLIVAN, Circuit Judges, and McALLISTER, Senior Circuit Judge.

CECIL, Circuit Judge.

This case is on petition for review from a decision of the Tax Court. The first issue before us involves the question of whether the losses incurred in the cattle-raising activities of the petitioner, Edward R. Godfrey, are deductible as business expenses for the taxable years 1955, 1956 and 1957. The petitioners, Edward R. Godfrey and Georgia G. Godfrey, filed joint returns during the years in question. This review concerns only Mr. Godfrey whom we will refer to as the taxpayer or petitioner.

The facts are stated in the Memorandum Findings of Fact and Opinion of the Tax Court reported at 22 CCH TCM 1. The facts may be briefly stated as follows: The petitioner was an executive of General Motors Corporation and in 1943 he was transferred from Anderson, Indiana, to Dayton, Ohio, where he became factory manager of the corporation's Frigidaire Division. Subsequently, he became general manager of that division.

In 1943 the petitioner purchased a farm of 109.27 acres of land in Warren County, Ohio, about seventeen miles from his place of employment. He then made his home in the residence of this farm until 1948. At that time he was transferred to Detroit, Michigan, where his employment required him to be until he retired in 1955. During this period he spent three weekends out of four each month on the farm. Considering the original purchase price, the improvements to the residence and farm, the purchase of additional farm machinery and equipment and the purchase of an additional tract of twenty-seven acres of land, the petitioner had an investment of approximately two hundred thousand dollars. At the time of the purchase, he had no experience in farming and his knowledge of farm operations was meager.

A small herd of Jersey cattle was on the farm at the time of the purchase. The petitioner supplemented this herd with the purchase of some additional Jersey cattle and conducted an operation for the production and sale of milk. He sold all of the Jersey cattle in 1950 and discontinued the production of milk. In 1945 he decided that the breeding, raising and selling of polled Hereford cattle would constitute the best use of his farm. He thereupon bought eight cows and one bull at a cost of $2,785. He estimated that it would require a herd of one hundred animals to operate at a profit and that it would take ten to twelve years to develop a herd of that size through the natural increase method. In 1957 the petitioner made a revised estimate that it would be 1961 or 1962 before he could hope to have a herd of 100 animals. In order to make a profit after reaching this goal he estimated that he would have to have a calf yield of sixty-

five per year, sell sixty animals per year, at $400 each, and hold his operating expenses to $20,000 per year. He never achieved any of these goals. At the beginning of the year 1958, there were sixty animals in the herd.

In January, 1959, the petitioner sold his herd, consisting of fifty-four animals, for $12,600. He sold the farm, including all of the land, residence, farm buildings and equipment for $210,000 in January of 1960.

The petitioner's losses for the taxable years in question were: 1955, $15,968.-12; 1956, $14,406.68, and 1957, $16,-945.07. He seeks to deduct these losses as expenses incurred in a trade or business. Section 162(a), Title 26 U.S.C., allows the deduction of "ordinary and necessary expenses * * * in carrying on any trade or business," and Section 165(c) (1), Title 26 U.S.C., provides that "losses incurred in a trade or business" may be deducted. Section 1.162–12 of Income Tax Regulations provides: "A farmer who operates a farm for profit is entitled to deduct from gross income as necessary expenses all amounts actually expended in the carrying on of the business of farming." (Not applicable to a farm operated for recreation or pleasure.)

▆▆▆ Whether a farm is operated for profit or pleasure is determined, for income tax purposes, from the primary or dominant purpose of the taxpayer. Hirsch v. Commissioner, 315 F.2d 731, 736, C.A. 9, and cases there cited; Wright v. Commissioner, 274 F.2d 883, C.A. 6; White v. Commissioner, 227 F.2d 779, C.A. 6. Did the taxpayer have a dominant motive to make a profit? This is a factual question and must be determined from all the facts and circumstances surrounding the taxpayer's purchase, use and operation of the farm. Many factual considerations enter into the ultimate finding of whether the taxpayer reasonably, and in good faith, was dominated by the profit motive.

The Tax Court found as an ultimate fact: "Petitioner was not, during any of the taxable years involved, engaged in a 'business' of breeding, raising and selling cattle." It concluded: "We believe from our consideration of the evidence, that petitioner's primary purpose in buying and developing the farm as a whole, was not to establish a business with which to augment his already large income, but rather to gratify his desire to establish a substantial country estate."

▆▆▆ Our review in this field of litigation "must be quite restricted" and we must accept the Tax Court's conclusions on factual issues unless they are clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 290, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218. Being unable to say that the factual findings of the trial court are clearly erroneous, the judgment of the Tax Court is affirmed on this issue of the case.

The second issue presented on this review concerns the deduction by the taxpayer of expenditures in a joint venture in Florida real estate. Section 212(2), Title 26, U.S.C. provides that an individual may deduct "ordinary and necessary expenses paid or incurred * * * for the management, conservation, or maintenance of property held for the production of income."

In 1955, petitioner together with four other persons contracted to purchase fifty acres of land in St. Petersburg, Florida, known as the "Goose Pond" property. Before taking title to the property they caused a "use survey" to be conducted for the purpose of determining the best commercial use of the property. From this survey they concluded that the upper part of the tract was best suited for an automobile dealership and that the lower portion could best be used for a shopping center. The petitioner claims that his proportionate share of the cost of this survey is a deductible item.

The purchase was consummated and it was then discovered that the Goose Pond property did not have a zoning classification that would permit it to be used in

the manner indicated by the survey. The purchasers employed attorneys in an effort to have the classification changed. The effort was unsuccessful. The petitioner claims his share of the attorneys' fee as a deductible expense.

In 1957, the petitioner with four associates purchased 14,000 acres of land near Ocala, Florida, known as the "Adams Packing" property, for $1,000,-000.

For the three taxable years in question the petitioner spent money for travel and living expenses in connection with these two real estate purchases which he claims as deductible expense items. The controverted expense items now before us are set forth in the following table:

| | 1955 | 1956 | 1957 |
|---|---|---|---|
| Use Survey | | | |
| Goose Pond | $1,666.66 | | |
| Legal Expense | | | |
| Goose Pond | | $2,394.77 | |
| Travel and Living Expense | | | |
| Goose Pond | $ 560.70 | $1,411.69 | $1,046.82 |
| Adams Packing | | | $ 372.96 |

The Tax Court found that the cost of the "use survey" was a capital expenditure. The court said: "It represented their first step in the contemplated development of the property; and its benefits were obviously expected to extend beyond the year in which the survey was made." The test of an ordinary business expense is whether it is of a recurring nature and its benefit is generally exhausted within a year. An expenditure is of a capital nature "where it results in the taxpayer's acquisition or retention of a capital asset, or in the improvement or development of a capital asset in such a way that the benefit of the expenditure is enjoyed over a comparatively lengthy period of business operation." Louisiana Land & Exploration Co. v. Commissioner, 7 T.C. 507, aff'd, 161 F.2d 842, C.A. 5; See Commissioner v. Boylston Market Ass'n., 131 F.2d 966, C.A. 1; Clark Thread Co. v. Commissioner, 100 F.2d 257, C.A. 3; Parkersburg Iron & Steel Co. v. Burnet, 48 F.2d 163, C.A. 4. Shainberg v. Commissioner, 33 T.C. 241, relied upon by the taxpayer, involved a financing survey which was regarded as a recurring cost and is factually distinguishable from the case at bar. The purpose of the use survey was to benefit the land in a permanent way so that the owners could derive income from it on the basis of its best use. We agree with the Tax Court that this was properly a capital expenditure.

We are of the opinion that the same reasoning is applicable to the expenditure for attorneys' fee. Counsel for the petitioner concedes that if the effort had been successful the expenditure would not have been a deductible item. We think there can be no distinction. The purpose of the expenditure was to create a permanent benefit. The fact that it created neither a permanent nor exhaustible benefit does not change its character. Louisiana Land & Exploration Co. v. Commissioner, 7 T.C. 507, aff'd, 161 F.2d 842, C.A. 5; Parkersburg Iron & Steel Co. v. Burnet, 48 F.2d 163, C.A. 4; Galt v. Commissioner, 19 T.C. 892, aff'd, 216 F.2d 41, C.A. 7, cert. den., 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743.

The Tax Court disallowed all items of travel and living expense, for the three tax years in question, which the taxpayer claimed as deductible. The court found that the item of $506.70 for the year 1955 related to the acquisition and development of the Goose Pond property and therefore constituted capital expenditures. The expenditures for the year 1956 the court found to be related

to the sale of the Goose Pond property and as such should be offset against the selling price in computing the capital gain on the sale. The court found that the item of $1,646.82 charged to the Goose Pond property in 1957 was of the same character as the 1956 expenditure (selling expense) and therefore not deductible. The other item in 1957, $372.96, charged against the Adams Packing property was found to be an expense of acquisition of the property and as such a capital expenditure.

The taxpayer has failed to show that these claimed items of travel and living expenses or any part of them were ordinary and necessary expenses incurred for the management, conservation or maintenance of property held for the production of income. The findings of the Tax Court are not clearly erroneous.

The judgment of the Tax Court is in all respects affirmed.