EVE M. BALLICH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
BALLICH v. COMMISSIONER
Docket No. 10563-77.
United States Tax Court
T.C. Memo 1978-497; 1978 Tax Ct. Memo LEXIS 21; 37 T.C.M. (CCH) 1851-40; December 13, 1978, Filed Luther B. Ditch, for the petitioner. Daniel J. Wiles, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Year
Deficiency
1971
$ 5,115.57
1972
4,487.44
1973
4,873.19
1974
3,076.50
The two issues presented for decision are: (1) whether respondent properly disallowed under section 183[1] the petitioner's net losses from the operation of a dog kennel on the basis that the activity was not engaged in for profit during the years 1971 through 1974; and (2) whether respondent properly disallowed the petitioner her share of net losses from the Ballich-Lanier Joint Venture, which was involved in the dog kennel operation, on the ground *23 that the activity was not engaged in for profit during the years 1971 and 1972. All of the facts have been stipulated and are found accordingly. The pertinent facts are set forth below. Eve M. Ballich (petitioner) was a legal resident of Stevenson, Maryland, when she filed her petition in this case. She timely filed her Federal income tax returns for the years 1971 through 1974 with the Internal Revenue Service Center, Philadelphia, Pennsylvania. Petitioner also filed timely partnership tax returns for the years 1971 and 1972 on behalf of the Eve Ballich and Mrs. Munro (Estelle) Lanier Joint Venture. These returns were filed at the Philadelphia Service Center. Petitioner has been interested in showing and breeding dogs since her childhood. Prior to 1956 she became involved in the breeding, raising, and showing of pure-bred wire fox terrier dogs. In 1963 petitioner for the first time filed a Schedule C with her Federal income tax return, reporting the activity of her dog showing and breeding operations. She has *24 filed a Schedule C each year reporting her kennel activities with her tax returns since that time. Each Schedule C indicates that the kennel activities have resulted in net losses in each year. No profit has been realized by the kennel operations during any year of its existence, from prior to 1956 to the present. The financial results of petitioner's kennel activities (excluding the joint venture) during recent years are as follows: Year
Gross Income
Expenses
Profit or Loss
1966
$ 9,839
$13,816
$ 3,978 Loss
1967
12,987
15,607
2,620 Loss
1968
12,617
24,200
11,583 Loss
1969
10,798
24,656
13,858 Loss
1970
15,265
29,224
13,959 Loss
1971
18,250
28,912
10,661 Loss
1972
15,632
24,245
8,613 Loss
1973
8,649
24,451
15,802 Loss
1974
8,971
17,464
8,496 Loss
The income from the kennel activity during the years in issue arose from (a) the sale of dogs; (b) stud fees; (c) trimming and grooming fees; and (4) prize winnings. Income of the kennel by source is summarized as follows: Sale of Year
Dogs
Stud Fees
Grooming
Prizes
1971
$3,420
0
$14,905.75
0
1972
5,100
$1,615
8,967.00
0
1973
5,929
1,925
1,030.40
$135.00
1974
5,800
1,650
1,971.85
0
*25 All dogs which were sold consisted entirely of those under 6 months of age. No dog was sold after it began its "show" career or after any prizes were won. In connection with the showing of her wire fox terriers, petitioner attended kennel club shows in the country and incurred entrance fees and travel expenses as follows: Year
Entrance Fees
Travel
Auto Travel
1971
$1,959.00
$3,285.73
$2,237.49
1972
1,329.90
2,384.78
3,852.81
1973
1,015.00
3,940.88
1974
1,272.00
3,213.38
Most of the expenses incurred in the operation of the kennel were of a current rather than a capital nature and would be repeated for each year of the kennel's activities. Petitioner raised and breeded her dogs in a barn modified as a kennel which she owned jointly with her former husband, Nicholas L. Ballich. The kennel was located on the same property as petitioner's residence. The building contains suitable space for 30 dogs and contains various runs, cement blacktop, gravel, and grass for each dog's needs. Petitioner was divorced in 1958. She has received alimony from her former husband since that time. The amount of alimony received by her for the years *26 in issue was as follows: Year
Alimony
1971
$ 21,600
1972
25,394
1973
27,600
1974
27,600
Petitioner was not engaged in any occupation other than the dog kennel activities during the years 1971 through 1974. Nor did she withdraw from any occupation in order to carry on the kennel activities. Petitioner could not and would not have engaged in the kennel operation but for the steady and constant receipt of alimony from her former husband, Nicholas L. Ballich. Although petitioner maintained records of expenses and income, no business records were kept on a particular dog as to whether stud fees or sale of puppies derived from the dog favorably or unfavorably compared to the cost of the dog. Petitioner did not maintain bank or financial accounts for the kennel separate from her personal checking account. Petitioner is not a member of any business associations such as the Chamber of Commerce or kennel business associations. Petitioner advertises selected dogs for stud and selected puppies for sale in publications involving terriers including Terrier Type,American Kennel Gazette, the Kennel Review and The American Fox Terrier Club Yearbook. *27 She does not advertise nor is the kennel listed in the local telephone book. She has never advertised in any local medium of general public circulation. She does not solicit business from pet stores. All dogs kept at the kennel are pure-bred terriers and are registered with the American Kennel Club, Inc. Since 1956 petitioner has owned 66 dogs designated as official "Champions" by the American Kennel Club. However, during the years at issue, monetary winnings of petitioner's dogs totaled $135. Petitioner is on the Board of Directors of the American Fox Terrier Club, is president of the Fox Terrier Club of Maryland, and is a member of the Fox Terrier Club of Maryland and the Wire-Fox Terrier Club of Central States. On occasions she has been a judge of some of these kennel club affairs. Kennel club shows normally involve a dog show contest and other social affairs such as banquets and meetings. Petitioner has never employed or consulted with any commercial kennel experts in an attempt to make her kennel economically profitable. Petitioner has never obtained or applied for a kennel license required of all commercial kennels (but not non-commercial kennels) in Baltimore *28 County, Maryland, for any year. Petitioner did not obtain any special zoning exception for her kennel. The Baltimore County Code requires a special exception to residential zoning in order to operate a commercial dog kennel. In 1967 petitioner and Mrs. Estelle H. Lanier entered into a joint venture or partnership. There was no written partnership agreement, but the petitioner and Mrs. Lanier agreed to divide expenses equally. By written agreement dated July 11, 1972, the joint venture was terminated and the joint affairs of Ballich and Lanier were provided for. The termination agreement provided as follows: Agreement made this 11th day of July, 1972 between Mrs. Eve Ballich of Stevenson, Md. (hereafter "Ballich") and Mrs. Estelle Lanier of Stevenson, Md. (hereafter "Lanier"). Whereas, Ballich and Lanier have been joint venturers in the ownership and operation of a kennel and the dogs therein; and Whereas, the parties wish to terminate their relationship with regard to any and all matters pertaining to the kennel, the dogs and other items. Therefore, it is hereby agreed as follows: 1. Lanier waives all her rights and claims to the dogs as of June 1, 1972. 2. *29 Lanier will transfer to Ballich all her rights, title and interest to the dogs owned by her individually and located at the kennel, as well as all her right, title and interest in the dogs jointly owned by them. 3. Lanier will execute such documents as are necessary to carry out the above provisions of this agreement. 4. In consideration for the above, Ballich waives any and all claims she or the joint venture has, may have, or ever had against Lanier for the care and maintenance of Lanier's dogs and the dogs of the joint venture and any claims pertaining to them or on any account. 5. Ballich releases Lanier without condition and without exception upon any liability or obligation to her or to anyone on account of any liability contracted or permitted by Ballich and promises to hold Lanier harmless from claims of others with regard to any matter pertaining to the kennel, the dogs or otherwise. 6. Ballich will execute such documents as are necessary to carry out the provisions of this agreement and when requested to do so will execute a general release to Lanier. Mrs. Estelle Lanier died in 1972 after the termination of the joint venture. The joint venture engaged *30 in the breeding and showing of pure-bred wire fox terriers in the kennel owned by petitioner. The dogs, expenses, and other affairs of the partnership were substantially commingled with the kennel operation of petitioner. Mrs. Lanier did not participate in the activities of the partnership but made contributions to the joint venture when needed to pay the expenses of the dogs. The financial results of the Ballich-Lanier kennel activities from inception to termination are as follows: Year
Gross Income
Expenses
Profit or Loss
1967
0
$ 1,148.70
$ 1,148.70 Loss
1968
$1,968.00
8,077.68
6,109.68 Loss
1969
7,821.95
10,319.26
2,497.31 Loss
1970
3,186.20
13,007.10
9,820.90 Loss
1971
5,078.15
18,196.03
13,117.88 Loss
1972
2,203.25
13,147.30
10,944.04 Loss
Income of the joint venture arose from (a) the sale of dogs; (b) stud fees; and (c) prize winnings. Income of the joint venture for the years in issue by source is summarized as follows: Year
Sale of Dogs
Stud Fees
Prizes
1971
$3,500.00
$1,167.00
$411.15
1972
1,175.00
700.00
328.25
Mrs. Lanier's capital account in the joint venture was $2,245.83 at *31 the point of termination represented by the excess of her interest in the dogs over the liabilities of the joint venture. Petitioner did not report any income from the receipt of the Lanier or joint venture dogs, but rather considered them as a gift from Mrs. Lanier. The Ballich-Lanier Joint Venture did not purchase any capital assets or dogs during the years in issue. All expenses were of a current nature and would be repeated for each year of the venture's activities. During each of the years in question losses were greater than the asset value of the venture and thus substantial additional contributed capital investment was required of Ballich and Lanier to pay the expenses of the joint venture. On Schedule C attached to each of petitioner's income tax returns she reported net losses as follows: Year
Net Loss
1971
$ 10,661
1972
8,613
1973
15,802
1974
8,496
On Schedule E attached to petitioner's income tax returns for 1971 and 1972 she reported losses from the Ballich-Lanier Joint Venture in the amounts of $6,558.94 for 1971 and $5,472.03 for 1972. The Ballich-Lanier partnership returns for the years 1971 and 1972 reported ordinary losses in the *32 amounts of $13,117.88 and $10,944.05, respectively. Petitioner did not file an election pursuant to section 183(e) of the Code for any year. In his statutory notice of deficiency dated July 22, 1977, the respondent disallowed the net losses claimed by petitioner for the dog kennel operations for the years 1971 through 1974, and petitioner's portion of the joint venture losses claimed for the years 1971 and 1972 because it was not established that such activities constituted a trade or business or transaction entered into for profit. The issues before us concern deductions claimed by petitioner for losses incurred in the breeding and showing of pure-bred dogs. These losses are attributable to kennel activities of petitioner and the Ballich-Lanier Joint Venture. The activities of petitioner's kennel and the joint venture were substantially intertwined and, for all practical purposes, were indistinguishable. Thus the resolution as to the deductibility of the losses of kennel activities will also substantially resolve the similar issue with respect to the joint venture. Petitioner contends that the losses are properly deductible because the kennel activities constituted a business *33 for profit and not a hobby. Her primary reliance is placed upon the facts that she kept accurate records of expenses and receipts of the kennel for tax purposes, she spent long hours breeding, caring for, and showing her dogs, and she was successful in having 66 "Champions" recognized by the American Kennel Club. To the contrary, respondent contends that petitioner's kennel activities arose from a love of dogs and was a hobby rather than a business engaged in for profit. He argues that petitioner had no good faith intention of making a profit from the activities and did not have a bona fide expectation that the kennel would ever make a profit. We agree with the respondent and hold that the petitioner's kennel activities were not engaged in for profit. It therefore follows that the claimed losses were properly disallowed by respondent under section 183. An activity not engaged in for profit under section 183 is the other side of the coin of a trade or business under section 162. Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect *34 to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." The legislative history indicates that Congress intended to codify the distinction between a business and a hobby drawn by case law. H. Rept. No. 91-413 (Part 1) 71 (1969), 1969-3 C.B. 200, 245; S. Rept. No. 91-552, 103 (1969), 1969-3 C.B. 423, 489. The test of whether an individual is carrying on a trade or business for purposes of section 162 depends upon his primary or dominant motive, i.e., is it to make a profit. Godfrey v. Commissioner,335 F. 2d 82, 84 (6th Cir. 1964), affg.T.C. Memo. 1963-1; Hirsch v. Commissioner,315 F. 2d 731, 736 (9th Cir. 1963), affg.T.C. Memo. 1961-256; Jasionowski v. Commissioner,66 T.C. 312, 319 (1976). The taxpayer's expectation of profit need not be reasonable, but it must be a good faith expectation. Mercer v. Commissioner,376 F. 2d 708, 710-711 (9th Cir. 1967), revg.T.C. Memo. 1966-82; Hirsch v. Commissioner,supra; *35 Benz v. Commissioner,63 T.C. 375, 383 (1974). Whether petitioner had the requisite profit motive is a question of fact to be determined on the basis of the entire record. Jasionowski v. Commissioner,supra at 319. The regulations set forth nine relevant factors, derived from prior case law, which are to be considered in determining the applicability of section 183. Jasionowski v. Commissioner,supra at 320; Benz v. Commissioner,supra.The regulations further provide that no one factor is conclusive and, thus, we do not reach our decision herein by merely counting the factors which support each party's position in this case. Section 1.183-2(b), Income Tax Regs., summarizes the nine relevant factors as follows: (1) manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the *36 activity; (4) expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of the occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. The first factor considered by the courts and recognized in the regulations is the manner in which the taxpayer conducts the activity. What is relevant is whether accurate books are kept, whether the activity is conducted in a manner similar to other comparable businesses and whether changes have been attempted in order to make a profit. It has been stipuated here that the petitioner kept records of her receipts and expenses adequate to establish these items for tax purposes. However, the financial affairs of petitioner's kennel were totally intermingled with her personal finances. All expenses of the kennel were paid from her personal accounts and the kennel maintained no financial *37 accounts of its own. This commingling of funds is an indication that the activity was a hobby rather than a business for profit. See Imbesi v. Commissioner,T.C. Memo. 1964-276, affd. on this issue 361 F. 2d 640 (3d Cir. 1966). Further, even though there is no dispute as to the accuracy of the records for tax purposes, the extent of the records shows the unbusinesslike approach of the kennel. No business records were kept of a nature which could be consulted to determine which portions, if any, of the kennel operation were or potentially were profitable. Likewise, the lack of detailed records as to which dogs were or were not profitable shows an attitude of petitioner that she did not care whether an activity was profitable. A further indication of this attitude is apparent from an analysis of the kennel's receipts. The receipts of the kennel were derived from dog sales, stud fees, grooming, and prizes. Since petitioner did not keep separate detailed records of these activities and the expenses which were incurred as to each one separately, the profit or loss attributable to each activity cannot bedetermined. Therefore, petitioner could not have *38 analyzed her kennel activities separately as to profitability. Moreover, she has not shown any change of her operating methods or abandonment of unprofitable activities in an attempt to make her kennel profitable. We think the practices of her kennel clearly indicate that the activities were not chosen to make a profit. For example, the financial figures for 1971 show that a majority of gross receipts came from grooming. However, after 1971, petitioner sharply limited that activity resulting in a substantial decrease in gross income. She asserts no business reason for the limiting of this activity, but, despite the decrease in income, she did not thereafter actively pursue the grooming of dogs. As to the sale of dogs, the evidence strongly suggests a motive only to weed out undesirable dogs rather than an intent to make a profit. All dogs which were sold were puppies under 6 months of age. No dog was sold after it became valuable when it began a "show" career or after it won any prizes. Thus, petitioner did not sell dogs when advantageous from a business viewpoint but rather her selling practices were more attuned to seeking prestige. *39 The selling of dogs only before establishing a show career has been held to be a factor in finding that the taxpayer was not in the activity for a profit. Imbesi v. Commissioner,supra.
As for advertising her kennel, there is no evidence that petitioner offered her services to the public. Petitioner does not advertise in any local medium of general circulation and does not solicit business from pet stores. Her limited advertisements in kennel activities may correctly be viewed as attempts to promote the prestige of her kennel rather than an attempt to make a profit. In considering the kennel practices of petitioner as a whole, it is questionable whether the kennel activity was conducted in a businesslike manner. No objective of making a profit is indicated by the way petitioner conducted her kennel activities. The conduct rather suggests that the kennel was her hobby. The second factor must be examined in the context of this case. Petitioner has been interested in wire haired for terriers since childhood and has attended numerous dog shows and has developed a number of outstanding dogs. Sixty-six of *40 her dogs have been designated as "champions" by the American Kennel Club. However, there is no indication that she ever received any training in managing dog kennels or in any business aspects of breeding and raising dogs. She has never employed or consulted with any commercial kennel experts in an attempt to make her kennel economically profitable. There is no evidence that she received any sort of business advice prior to engaging in the kennel operation. Unquestionably she began the operation not for profit since she was engaged in the activity of breeding, raising, and showing pure-bred wire fox terrier dogs at least 7 years before ever reporting the operation on her tax returns, although in those 7 years she incurred losses. The lack of consultation of experts or businessmen in the field prior to engaging in the activity is indicative of a lack of profit motive. Benz v. Commissioner,63 T.C. 375 (1974). The third factor appears to be somewhat helpful to petitioner but upon reflection is not. *41 The fact that a taxpayer devotes much of his time and effort to the activity may in some instances indicate an intention to derive a profit. However, where, as here, the activity has substantial personal or recreational aspects, the time and effort spent may indicate a "labor of love" rather than an intent to derive a profit. As the Court stated in White v. Commissioner,23 T.C. 90, 94 (1954), affd. 227 F. 2d 779 (6th Cir. 1955), "The gratification derived from an occupation worth doing, possibly beneficial to others and probably requiring long hours of arduous labor, must still not be confused with an intention to return a profit [emphasis added]." See also Benz v. Commissioner,supra.This reasoning applies in the instant case since the breeding and showing of dogs was of a recreational nature. In addition, the petitioner is involved in dog shows which have social aspects and dog clubs which generally signify a hobby. As to the relevance of petitioner's time and effort, she did not withdraw from any business activity in order to operate her kennel. During 1972 she was 65 years of age and was not engaged in any other *42 activities which demanded her time. On the contrary, she was divorced and had an independent source of substantial passive income. These facts support the inference that petitioner's time spent on her kennel operation was out of love for her dogs rather than with the objective of making a profit. Another factor is the history of losses of the activity. The petitioner has suffered losses from her kennel operation for a period of 20 years. Although there is no evidence of a reasonable period in which a commercial dog breeder may expect to begin showing profits, it is fair to assume that 20 years of losses is far more than should be tolerated or endured if one would expect the activity to be profitable. Benz v. Commissioner,supra at 384; Bessenyey v. Commissioner,45 T.C. 261 (1965), affd. 379 F. 2d 252 (2d Cir. 1967). While the full extent of petitioner's losses are not know, the losses for the 5 years prior to the first year at issue totaled $45,998 and the 4 years at issue added further losses of $43,572. These continued losses, *43 far beyond a reasonable period to bring the operation to profitable status, are an indication that the activity was not one for profit. Another factor to be considered is the financial status of petitioner. Substantial income from outside sources, showing the lack of need to make a profit from the activity, may indicate a lack of profit motive. Benz v. Commissioner,supra;Bessenyey v. Commissioner,supra.Petitioner received alimony in excess of $20,000 for each year, increasing to $27,600 in 1974. She jointly owned the kennel building and had no mortgage or rental costs for it. She has conceded that she would not have engaged in the kennel operation but for the steady and constant receipt of alimony from her former husband. This concession closely approaches the ultimate issue to be decided. If petitioner would not have engaged in the activity but for outside income, it follows that she realized that she needed those outside funds to support herself and her kennel.Hence petitioner did not expect the kennel to make any profit, especially *44 the profit to recoup earlier losses. Furthermore, the operation of the kennel and the losses derived therefrom have provided substantial tax benefits to the petitioner by offsetting much of the taxable alimony income. The extent of that tax benefit is shown by comparing the losses and the deficiencies determined by the disallowance thereof for the year 1971 through 1974. Similar tax benefits would have been received for the years prior to 1971. The final factor contained in the regulations is the element of personal pleasure or recreation. Certainly, the raising and breeding of dogs has substantial recreational aspects. Petitioner has been interested in the breeding and showing of dogs since childhood and undertook the operation of a kennel for 7 years as a hobby before claiming losses from it on her tax returns. The showing of dogs involves personal social elements such as banquets and meetings. Another personal element is the prestige of being recognized for the excellence of the dogs by having them named as "Champions." An additional factor which is relevant here is the relationship *45 of petitioner's kennel activity to the licensing and zoning laws of Baltimore County, Maryland, where the kennel and her residence are located. The Baltimore County Code provides for licensing of all commercial kennels and provides special zoning requirements therefor. Baltimore County Code §§ 3-22 and 3-11(a). Petitioner's kennel did not have such a license or zoning clearance. Either the petitioner did not know of the requirements of the law or her failure was intentional since commercial kennels, and not those of "hobbyists or dog fanciers," must comply with the licensing and zoning regulations.
We are not persuaded by the few outward manifestations of a business upon which the petitioner relies. In short, we are convinced that her dog kennel activities were not operated on a basis which supports the conclusion of good faith expectation of profitability and there is no evidence of a plan of development that would change this situation. Section 1.183-2(b)(6), Income Tax Regs. Nor is there any other evidence that persuades us that petitioner's profit motive, while unreasonable, was nevertheless bona fide. Petitioner does not address the joint venture *46 as a separate issue in her opening brief but contrasts her involvement with the dog kennel with that of Mrs. Lanier and concedes "Mrs. Lanier's kennel operation is the classic example of a hobby rather than a business venture." We agree that Mrs. Lanier's involvement with the kennel constituted a hobby, and we think the petitioner was in no better position. As previously stated, the resolution of this issue is very closely connected with the first issue. The joint venture was engaged in the same activity. The dogs, expenses, and other affairs of the venture were substantially commingled with petitioner's kennel operation. Mrs. Lanier did not participate in the activities of the venture but merely contributed her 50 percent share to pay the expenses of the dogs kept by it. Petitioner was the only active participant in the joint venture and was 60 years of age when the venture began. Mrs. Lanier was of advanced age and died in the year of the termination of the joint venture. Thus it was indistinguishable from petitioner's separate kennel activities, which had already had more than 11 years of losses when the joint venture arrangement was entered into. The joint venture's kennel *47 activities, as the petitioner's activities, never produced a profit but incurred $43,638.52 of losses in the 6 years of its existence. During the years in issue the net assets of the joint venture were never greater than $6,500 and the total gross income received for such years was only $7,281.40. Yet during 1971 and 1972, the joint venture incurred $31,343.33 in expenses.It is inconceivable that it was ever begun or continued with the objective of making a profit. It was really nothing more than an expense sharing arrangement. Petitioner would care for the dogs and pay half the expenses. In return, at the end of the joint venture, petitioner secured complete ownership of all the dogs. Petitioner did in fact receive the dogs without further compensating Mrs. Lanier in 1972. She considered the receipt of the dogs as a gift. Accordingly, we hold that the activities of the joint venture were not engaged in for profit in 1971 and 1972. Decision will be entered for the respondent. Footnotes
1. All section references herein are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.↩