LAYARD M. WHITE and LENA PAULINE WHITE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
White v. Commissioner
Docket No. 4837-78.
United States Tax Court
T.C. Memo 1980-582; 1980 Tax Ct. Memo LEXIS 11; 41 T.C.M. (CCH) 671; T.C.M. (RIA) 80582; December 30, 1980
Layard M. White, pro se. Michael J. Cooper, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax of $ 2,105.95 for the calendar year 1974 and $ 1,862.08 for the calendar year 1975. The issues for decision are (1) whether petitioners are entitled to deduct the expenses incurred in 1974 and 1975 in connection with their farm under the provisions of sections 162 and 183, I.R.C. 1954, [1] and (2) whether petitioners *13 are entitled to itemized deductions in excess of the standard deduction as allowed by respondent in his deficiency notice. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. [2]
Petitioners, Layard M. and Lena P. White, husband and wife, resided in St. Louis, Missouri, at the time of the filing of their petition in this case. They filed a joint Federal income tax return for the calendar years 1974 and 1975 with the Internal Revenue Service Center at Kansas City, Missouri. Layard M. White (petitioner) was born and raised on his father's farm located in Shannon County, Missouri, about 150 miles south of St. Louis, Missouri. After World War II, he moved to St. Louis to find work and has lived and worked in that area since that time. Petitioner *14 has been employed as a full-time hourly employee by the General Motors Corporation at their Assembly Division in St. Louis, Missouri, since 1960. Currently, he lists his occupation as a tractor operator. His wife has been employed as a machine operator by the International Hat Company in St. Louis since 1969. At the time of trial, petitioner was due for retirement in 10 years. On May 10, 1969, petitioner purchased 80 acres of land located in Shannon County, Missouri (the farm), from his father for a total purchase price of $ 5,000. In order to finance the purchase, he borrowed $ 4,000 from the Bank of Bunker located in Bunker, Missouri. Part of the purchase price was paid to petitioner's father and the balance was paid to his brothers and sisters, they being the other potential heirs of petitioner's father. The farm was located about three-quarters of a mile from the home farm where petitioner grew up. It consisted of approximately 40 acres of pastureland and 40 acres of woodland. At the time of trial, improvements on the property consisted of a house, garage, fences, chicken house, outhouse, and a smokehouse. During 1974 and 1975 petitioner's father lived in the farmhouse *15 which petitioner had built after he purchased the property. Petitioner's father was not required to and did not pay rent while he lived in the home. At the time he purchased the farm, petitioner had never invested in real property nor had he invested in any type of business venture. In 1969, the property had not been farmed for a number of years which meant that the 40 acres in pasture had to be recleared and refenced. However, since he was not a farmer by trade and had not invested in any farming operations, petitioner did not own the necessary tools or equipment. During the initial few years he expended a small amount of money to purchase secondhand equipment such as a tiller, hand garden tools, a chain saw, a 1948 four-wheel drive jeep, a used Ford tractor and a five-foot rotary cutter. Most of the tools and equipment were purchased from petitioner's father. In 1971, petitioner traded in the tractor and cutter and purchased a used 1965 model 800 Ford diesel tractor and a 1966 Sunmaster Bushhog cutter for a net cash price of $ 1,210.25. In addition, he purchased a grader blade for $ 135, a disc for $ 474, and a 16-bottom plow for $ 235. The tractor and other equipment *16 was purchased from the Erb Farm Equipment Co. located in Gravois, Missouri. The equipment that petitioner purchased in 1971 allowed him to begin clearing the land. Thereafter, petitioner drove the 150 miles from St. Louis to the farm every weekend and every vacation in order to work the land. During the time he spent on the farm, he stayed at the farmhouse and generally worked from daylight to dark. At the time of trial he lacked 10 acres of having the entire 40-acre tract cleared. In addition to clearing the land, he also built a pond and had sown grass on the approximately 3-1/2 acres which surrounded the pond. When petitioner would travel to the farm on the weekends, he would often be accompanied by his wife and at least one of his three children. In 1974, three riding horses were kept for the children on the farm and he also had two watchdogs which would stay under a cyclone fence. The horses were only for riding and were not used in any productive activity on the farm. Petitioner maintained a garden measuring 300-feet long by 175-feet wide and a one-half acre strawberry patch during 1974 and 1975. There were also nine bearing fruit trees on the property. Petitioner *17 purchased the farm with the intent of preparing it for the eventual operation of a hog raising business. In 1970 petitioner purchased five brood sows with the intent of beginning his hog raising operation but he sold them at a loss in the same year because he ran into personal financial difficulties and he could not be there on a constant basis to care for them. Petitioner did not raise any hogs on his farm in the years subsequent to 1970 and at the time of trial he regarded the farm as still in "preparation." If he had not run into financial difficulties, petitioner estimated that it would have taken him two to three years to prepare the land for the hog raising business. In 1974 and 1975 petitioner did not belong to any farm organizations. Petitioner enjoys deer hunting on his property and occasionally hunts with his son. He also likes to fish and does so in a river about 14 miles from the farm. Although petitioner did most of the work on the farm, he also paid a small wage for work done by his son and two older, somewhat disabled men named Mr. Hart and Mr. Scaggs. At the time of trial, Mr. Hart lived in the farmhouse and watched over the equipment while petitioner was working *18 during the week in St. Louis. When he retires, petitioner definitely plans to move from St. Louis to the farm. A ledger book was kept for the farm in which petitioner recorded all of the farm expenses and income. While he did write checks for all farm expenses, the checks were written on his personal account as he did not maintain a separate farm checking account in 1974 and 1975. Petitioner kept all of his records including receipts for farm purchases in a black plastic case about the size of an attache case. In April 1977 petitioner had just had his 1976 income tax return prepared and for that reason had the black case full of records in his pickup truck. On April 19, 1977, his 1974 pickup truck was stolen and, although he later recovered the truck, all of the records were lost. In order to collect from the insurance company, petitioner prepared an itemized list of all personal items which were not recovered with the truck. He did not claim the black case as it was of minimal value. Petitioner and his wife were hourly wage earners who did not have any other sources of income nor did they maintain a savings account in 1974 and 1975. Their combined total income from wages *19 was as follows: Reported
Year
Income
1971
$ 15,029.92
1972
14,973.39
1973
12,914.91
1974
16,236.56
1975
19,235.10
1976
19,163.59
1977
24,597.08
Petitioner reported a small amount of income from his farm each year, most of which was derived from fees charged for hunting privileges and jeep rental in connection with the hunting privileges. The farm income and deductions reported on petitioner's Schedule F for the years 1971 to 1977 were as follows: Year
Income
Expenses
Profit (Loss)
1971
$ 344
$ 5,488.91
($ 5,144.91)
1972
410
7,234.66
( 6,824.66)
1973
340
8,366.04
( 8,026.04)
1974
375
8,192.72
( 7,817.72)
1975
535
8,418.60
( 7,883.60)
1976
269
5,611.00
( 5,342.00)
1977
386
8,090.09
( 7,704.09)
In his notice of deficiency for 1974 and 1975, respondent totally disallowed the claimed farm losses and allowed the claimed itemized deductions only to the extent of the standard deduction for the years in issue. OPINION The first issue presented is whether petitioner is entitled to deduct the expenses incurred in connection with his farm as trade or business expenses under sections 162 and 183. *20 Expenditures made by a taxpayer are deductible as trade or business expenses only where the activity with respect to which the expenditure is made constitutes the present carrying on of a business. Amounts expended in preparing to enter into a business at some future time are nondeductible capital expenditures. Godfrey v. Commissioner, 335 F.2d 82 (6th Cir. 1964), cert. denied 379 U.S. 966 (1965), affirming a Memorandum Opinion of this Court. For an activity to constitute a trade or business, the activity must be one which is carried on by the taxpayer with the motive or intention of realizing a profit. Section 183(a) provides that if an individual does not engage in an activity for profit then deductions arising out of such activity shall be disallowed except as provided in section 183(b). An "activity not engaged in for profit" is defined in section 183(c) as "any activity other than one with respect to which deductions are allowable for the taxable year under *21 section 162 or under paragraph (1) or (2) of section 212." [3]
*22 In order for petitioner to be entitled to the business expense deductions he claims, he must establish that he engaged in a trade or business with the primary purpose and intent of making a profit. Godfrey v. Commissioner,supra at 84; Hirsch v. Commissioner,315 F.2d 731, 736 (9th Cir. 1963), affirming a Memorandum Opinion of this Court; Dunn v. Commissioner,70 T.C. 715, 720 (1978). Petitioner's expectation of profit need not be a reasonable one but he must have a bona fide expectation of realizing a profit. Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Jasionowski v. Commissioner,66 T.C. 312, 321 (1976). In determining whether the taxpayer engaged in the activity for profit, all of the relevant facts and circumstances are to be taken into account. Section 1.183-2(b), Income Tax Regs.; Jasionowski v. Commissioner,supra at 319. While no one factor is to be determinative, greater weight should be given to objective facts than to the taxpayer's *23 mere statement of his intent. Section 1.183-2(a) and (b), Income Tax Regs.; Engdahl v. Commissioner,supra at 666. Section 1.183-2(b), Income Tax Regs., lists a number of relevant factors, which were basically derived from prior case law, to be considered in determining whether an activity is engaged in for profit. Benz v. Commissioner,63 T.C. 375, 383 (1974). [4]
Before we consider whether *24 petitioner had the requisite profit motive in the activities he undertook at his farm, he must establish that he was engaged in an activity which amounted to a trade or business.Petitioner stated that he purchased the farm with the idea of preparing it so that he could operate a profitable hog raising business. In 1970 he attempted to carry out his plans by purchasing five brood sows. However, due to personal financial difficulties and the fact that he was not around during the week to take care of them, he sold them at a loss in the same year. After 1970 and to the time of trial, petitioner has not purchased or fed any hogs on his property and he admitted at trial that his farm was "stilll in preparation." Expenses incurred in preparing to enter a trade or business are not deductible as a deduction is allowed under section 162 only for expenses incurred in carrying on a trade or business. See Wallendal v. Commissioner,31 T.C. 1249, 1251 (1959). In 1974 and 1975 petitioner was preparing his farmland for use in a hog raising business at some time in the future. For that *25 reason, the expenses were not incurred in carrying on a trade or business and are therefore not deductible in the years in issue. See Godfrey v. Commissioner,supra.
If we were to assume, which we have not, that the activities in which petitioner engaged in 1974 and 1975 were the operation of a farm, the deductions must still be denied. As we stated above, although his expectation of profit from the farm need not be a reasonable one, petitioner must have a bona fide expectation of producing a profit.See Jasionowski v. Commissioner,supra at 322; Golanty v. Commissioner,72 T.C. 411, 427-428 (1979). In the instant case, the manner in which the farm was operated in the years in issue shows that petitioner had no expectation of a profit and realized that the operation was not capable of producing a profit. Petitioner stated at trial that the profitmaking activity on the farm would be raising hogs.However, when he made his initial investment in hogs in 1970, he figured that it would take about two or three years to make the business profitable. In 1970 petitioner sold the hogs and had made no investment in hogs thereafter *26 through the years here in issue in an attempt to begin his hog raising business. The inference from the record is that he did not intend to actually commence the raising of hogs until he had finished preparing his land for that activity and possibly not until he retired in about 10 years. Furthermore, it is clear from the evidence presented that there were not any activities on the farm during the years here in issue which might produce a profit or which petitioner intended to produce a profit. The 40 acres of open pastureland were not suitable ad were not used for growing crops as petitioner was in the process of preparing the land for his hog raising operation.While petitioner did report income of $ 375 in 1974 and $ 535 in 1975 from his farm, the majority of such income consisted of fees charged for hunting and fishing privileges. Petitioner does not contend that he was in the business of operating a hunting or fishing business or that he intended to make a profit from charging fees for hunting privileges. [5]
*27 The second issue presented is whether petitioner has substantiated his claimed itemized deductions in excess of the standard deduction allowed by respondent in his deficiency notice for the years 1974 and 1975. Petitioner has the burden or proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
As a general rule, taxpayers are required to keep permanent books or records which will establish the amount of income and deductions claimed on a return. See Income Tax Regs., section 1.6001-1(a). In the instant case, petitioner did not produce any of his books and records which would substantiate his claimed deductions. Petitioner testified that the reason he did not do so was that all of his tax records were in his pickup truck when it was stolen and, although the truck was recovered, the records were never found. In any event, he stated that his income tax *28 return preparer completed his returns for the years in issue in reliance upon the receipts which petitioner had given him. Petitioner did attach a five-page addendum to his return for each of the years 1974 and 1975 which set forth a typed itemized listing of all of his income and deductions for that particular year. Based on the foregoing and believing that petitioner testified in an honest and forthright manner, we will apply the rule set forth in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), and, where appropriate, estimate petitioner's allowable deductions. As to the calendar year 1975, we agree with respondent that petitioner's itemized deductions do not exceed the standard deduction of $ 2,600 and therefore he is entitled only to that amount. However, as to the calendar year 1974, we conclude that petitioner has established that he is entitled to itemized deductions in excess of the standard deduction. With respect to medical and dental expenses, we find that, in addition to the expenses stipulated by the parties, [6] petitioner has established that he is entitled to a deduction of $ 216.55 for other expenses. *29 With respect to taxes, we find that petitioner is entitled to his claimed deduction of $ 422.70 for state and local income taxes. Based on petitioner's testimony that he drove at least one and sometimes two vehicles to and from the farm on weekends and during his vacation time in 1974, we conclude that, according to the gasoline tax table and using the tax rate for Illinois, petitioner is entitled only to a deduction of $ 200 for state and local gasoline taxes. Utilizing the general sales tax table for Illinois and adding back the disallowed farm loss to petitioner's adjusted gross income, we find that petitioner is entitled to a deduction of $ 269 and in addition is entitled to a deduction of $ 127.82 for sales tax paid on the pickup truck which he purchased in 1974. The total amount allowed as, a "general sales" tax deduction is $ 396.82. With respect to interest, we find that petitioner is entitled to the claimed deductions for interest paid on consumer loans in the amount of $ 456, on installment purchases in the amount of $ 93, and for his home mortgage in the amount of $ 658.32. However, petitioner is not entitled to an additional itemized deduction for the interest *30 claimed on his Schedule F as he did not establish the existence of any debts in excess of those which supported his claimed itemized deductions on his Schedule A and B. In fact, it appeared from the record that the interest claimed on his Schedule F resulted from the same debt which produced the itemized deduction of $ 658.32. In order to be entitled to a deduction for charitable contributions, section 1.170A-1(a)(2)(i), Income Tax Regs., provides that "taxpayers shall state in their income tax returns the name of each organization to which a contribution was made and the amount and date of the actual payment of each contribution." On his return, petitioner listed a deduction for contributions of "2 percent AGI miscellaneous" which obviously does not meet the requirements of the regulation and therefore must be disallowed. However, we find that on the basis of the explanation of contributions to other listed charities contained in the sheet attached to petitioner's return, he is entitled to a deduction for charitable contributions to his church, the Salvation *31 Army, and the Cancer Fund in the amount of $ 216. Finally, with respect to miscellaneous deductions, we find that petitioner is entitled to a deduction of $ 94.70 for union dues as they were listed on his W-2, a copy of which was attached to his return. We also conclude that petitioner is entitled to a deduction claimed under "other husband" in the amount of $ 36 and a deduction claimed under "other wife" in the amount of $ 32.26 for special clothing necessitated by their respective occupations. Accordingly, the total amount allowed as a "miscellaneous deduction" is $ 162.96. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise stated.↩
2. At trial, petitioner pointed out that the purchase price of a double-set plow and disk as stipulated was incorrect and in fact represented only the purchase price of the plow. The stipulation was revised by striking therefrom this stipulated price.↩
3. Sec. 183(a) through (c) reads as follows: SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) General Rule.--In the case of an activity engaged in by an individual or an electing small business corporation (as defined in section 1371(b)), if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) Deductions Allowable.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). (c) Activity Not Engaged in for Profit Defined.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212↩.
4. The factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.↩
5. Since we have concluded that petitioner was not in the trade or business of farming in 1974 and 1975 and therefore not entitled to deduct his claimed farming losses, we do not reach the further question rasied concerning whether petitioner has substantiated that he made the expenditures which compose the claimed deductions.↩
6. Although petitioner claimed $ 115 for expenses for "doctors, dentists, nurses, etc.," the parties have stipulated that the amount was actually $ 140.↩