JACK R. AND ELEANOR HARRIS HOWARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Howard v. Commissioner
Docket No. 4939-78.
United States Tax Court
T.C. Memo 1981-250; 1981 Tax Ct. Memo LEXIS 494; 41 T.C.M. (CCH) 1554; T.C.M. (RIA) 81250; May 21, 1981. Richard Katcher, for the petitioners. Tracy L. Rich, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1973 and 1974 in the amounts of $ 5,441 and $ 6,510, respectively. Due to concessions by petitioners, the remaining issues for our decision *496 are: (1) Whether club dues and expenses are deductible as ordinary and necessary business expenses under section 162, [1] and if so, whether the deduction is disallowed under section 274; (2) Whether expenses incurred for home entertainment are deductible as ordinary and necessary business expenses under section 162, and if so, whether the deduction is disallowed under section 274; (3) Whether expenses incurred by petitioner Eleanor Harris Howard as an author are properly deductible under section 162 or are disallowed under section 183 because her writing was an activity which was not engaged in for profit; (4) Whether various miscellaneous expenses are deductible as ordinary and necessary business expenses under section 162. Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of the filing of the petition in this case, petitioners Jack R. Howard and Eleanor Harris Howard resided in New York, New York. Petitioners filed their Federal income tax returns *497 for the calendar years 1973 and 1974 computing their taxable income for those years using the cash basis method of accounting. During the years in issue, petitioner Jack Howard ("Mr. Howard") was president and chief executive officer of the E.W. Scripps Company, the parent corporation of Scripps-Howard Newspapers. During this same period Mr. Howard was the general editorial manager of the Scripps-Howard Newspapers, president of Scripps-Howard Broadcasting Company, and a member of the Advisory Board of the Inter-American Press Association, an organization of newspaper publishers in the western hemisphere. The E.W. Scripps Company and its related companies, Scripps-Howard Broadcasting Company and United Press International (collectively referred to as "Scripps") are engaged in the business of owning and operating newspapers, radio and television broadcasting stations and an international news service. As chief executive officer and general editorial manager, Mr. Howard had responsibilities and duties, among others, for the news and editorial content of the Scripps newspapers. It was the long-standing policy of Scripps to require its officers and key employees as part of their *498 duties to engage in business promotion and entertainment without reimbursement from the companies. Among such unreimbursed expenses were certain club membership expenses and other expenses for business entertainment which were considered to be necessary and appropriate to the positions held by the employees of the companies. Tis policy was examined and reaffirmed by unanimous vote of the board of directors of Scripps on December 7, 1960. Petitioners have substantiated that they spent the amounts claimed as deductions on their 1973 and 1974 returns. Issue 1. Club Dues and Expenses
FINDINGS OF FACT Petitioners claimed deductions on their 1973 and 1974 tax returns for two-thirds of the cost of the following club dues and expenses: Club
1973
1974
Bohemian Club (SF)
$ 2,635.91
$ 2,709.75
Dutch Treat Club (NY)
65.00
156.31
River Club (NY)
869.00
924.00
Yale Club (NY)
351.25
385.00
Pilgrims of the U.S.
35.00
25.00
Beta Leadership Society
10.00
10.00
Seawanhaka Corinthian Yacht Club
(Oyster Bay, N.Y.)
679.00
720.00
Total
* $ 4,635.21
$ 4,930.06
*499 The Bohemian Club ("the Club") is an association of persons who work or have in interest in literature, arts, music or drama. The Club is located in San Francisco, California, and owns a grove north of San Francisco where members and their guests spend up to 15 days engaging in various activities, such as attending lectures and concerts. Mr. Howard is a member of the Club and took as his guests for 1973 and 1974 Robert Schmon, president of Ontario Paper Co., Ltd., and Earl H. Richert, editor in chief of Scripps-Howard Newspapers, respectively. Both guests stayed approximately eight days at the Bohemian Club. During the stay in 1974, Mr. Howard discussed business with his guest, Earl Richert. OPINION Petitioners deducted two-thirds of the cost of membership dues and expenses for seven clubs on their 1973 and 1974 returns. At trial, petitioners conceded that the deductions taken for three of the clubs (the River Club, the Yale Club, and the Seawanhaka Yacht Club) were not allowable. Petitioners presented no evidence as to whether the dues and expenses for three other clubs (the Dutch Treat Club, the Pilgrims of the U.S., and the Beta Leadership Society) were ordinary and necessary *500 business expenses under section 162, and thus they have failed to meet their burden of proving that those deductions were proper. See Rule 142(a), Tax Court Rules of Practice and Procedure.
The remaining item of club dues and expenses relates to the Bohemian Club, an association of persons who work in or are interested in the arts. The Club owns land north of San Francisco, and during the summers of 1973 and 1974, Mr. Howard took guests and stayed at the retreat for approximately 8 days each year. Petitioners contend that the dues and expenses related to the Bohemian Club are deductible as ordinary and necessary business expenses under section 162, and that the deduction is not disallowed under section 274(a)(1)(B). Conversely, respondent maintains that the Club dues and expenses are not ordinary and necessary under section 162 and that even if the deduction is allowable under section 162, it is disallowed under section 274(a)(1)(B) because the Club was not used primarily in furtherance of and directly related to the active conduct of Mr. Howard's business. We agree with respondent that the deduction for Bohemian Club membership expenses is disallowed under section 274(a)(1)(B) *501 because the expenses were not directly related to the active conduct of Mr. Howard's business as president and chief executive officer of Scripps. [2]
Section 274(a)(1)(B)[3] disallows a deduction for expenses incurred with respect to an entertainment, amusement, or recreational facility unless the facility was used primarily in furtherance of a taxpayer's trade or business and the expense was directly related to the active conduct of such trade or business. Facilities used in connection with entertainment include yachts, country clubs, hunting lodges, fishing camps, and homes in vacation resorts. Section 1.274-2(e)(2), Income Tax Regs. Dues paid to any social, athletic, or sporting club or organization are treated as expenditures with respect to an entertainment facility under section 274(a)(1)(B). Section 1.274-2(e)(3)(ii), Income Tax Regs. *502 *503 In the instant case, petitioners have failed to show that the summer retreats were directly related to the active conduct of Mr. Howard's trade or business as chief executive of a communications business. Although some of the other members of the Club may have provided Mr. Howard with information which was useful in his profession, the setting and activities of the Club make it analogous to a vacation resort, which is generally considered not to be directly related to the active conduct of a taxpayer's trade or business unless it is clearly established to the contrary. See sec. 1.274-2(c)(7), Income Tax Regs.; Buddy Schoellkopf Products, Inc. v. Commissioner, 65 T.C. 640, 660 (1975). The common focus of the Club was a professional or non-professional interest in the arts, and much of the Club's activities were related to one of the arts. And although Mr. Howard did have some business discussions with his guest for 1974, the testimony indicates the discussions were informal and general in nature, of the kind that normally occurs when people of a common profession are together. See Berkeley Mach. Works & Foundry Co. v. Commissioner, 623 F.2d 898, 904 (4th Cir. 1980). *504 Therefore, based on the facts before us, we conclude that the Club dues and expenditures are disallowed as deductions for the two taxable years in issue under section 274(a)(1)(B). Issue 2. Home Entertainment Expenses
FINDINGS OF FACT Petitioners incurred expenses for hosting private dinner parties at home, which they deducted as business expenses. The guests were prominent people from politics, business, journalism, publishing, theatre, and other fields. The individuals ranged from prominent office holders to a presidential press secretary, and included many individuals affiliated with the news business. Most of the individuals were professional rather than social acquaintances, although in some instances both elements were a factor. The dinners for which petitioners took a deduction occurred approximately once a month, almost always on the evening of a business day during the week. In addition, petitioners often hosted dinner parties at home for social reasons, the cost of which they did not deduct as a business expense. OPINION Petitioners deducted the cost of hosting small dinner parties at their home for 1973 and 1974. Petitioners invited people prominent *505 in the fields of journalism, publishing, politics, business, and the arts. Petitioners hosted these dinner parties approximately once a month. Petitioners argue that their home entertainment constitutes an ordinary and necessary business expense under section 162, and is not barred by section 274. Respondent makes the opposite argument. We agree with petitioners. Section 162(a)[4] allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Thus, the expenditures must have been "necessary" in that they were "appropriate and helpful" to Mr. Howard's business, Welch v. Helvering, 290 U.S. 111 (1933), and they must have been "ordinary" in that they were a normal and natural expenditure under the specific circumstances. Henry v. Commissioner, 36 T.C. 879, 884 (1961). *506 As president and chief executive officer of Scripps, Mr. Howard was the general editorial manager responsible for the editorial and news content of a large communications business which included newspapers, radio and television broadcasting stations, and an international news service. Mr. Howard, a credible and forthright witness, testified that the purpose of the dinners was to provide an opportunity to discuss developments and ideas with people who were prominent in their professions. Thus, Mr. Howard was able to keep abreast of topics that were important to him as a corporate executive in the communications business, and he was able to establish contacts that were useful sources of information in the future. Respondent argues that the dinners were primarily social affairs through which petitioners repaid social obligations. We do not agree. The business dinners were held rather infrequently--once a month--usually on a weekday night after the conclusion of the day's business. We also particularly note that petitioners did a great deal of home entertaining which was not business related but social and for which petitioners did not take a deduction. Furthermore, a few *507 of the same guests invited to the business dinners were invited to petitioners' home on other occasions which were intended to be social rather than for business purposes. If a corporate officer is expected to incur entertainment or other business related expenses in the course of discharging his executive duties, he may deduct the unreimbursed expenses as ordinary and necessary expenses of his business as a corporate executive. Heidt v. Commissioner, 274 F.2d 25, 27-28 (7th Cir. 1959); Schmidlapp v. Commissioner, 96 F.2d 680 (2d Cir. 1938); Walliser v. Commissioner, 72 T.C. 433, 437 (1979). From the facts of the case, we conclude that the home entertainment did constitute ordinary and necessary business expenses, deductible under section 162. Respondent further contends that the home entertainment deductions are barred by section 274(a). Petitioners maintain that the dinners fall within the "business meal" exception contained in section 274(e)(1), but that in any event, they meet the tests of section 274(a). We agree with petitioners that the dinners fall within section 274(e)(1). *508 Section 274(e)(1)[5] states that the limitation provision of section 274(a) shall not apply to expenses for food and beverages furnished to any individual under circumstances which, taking into account the surroundings, the taxpayer's business, and the relationship to the business of the persons to whom the food is furnished, are of a type generally considered to be conducive to a business discussion. There is no requirement that business actually be discussed for this exception to apply. Sec. 1.274-2(f)(2)(i), Income Tax Regs. The surroundings in which the food or beverages are furnished must be such to provide an atmosphere free of substantial distractions to discussion. Sec. 1.274-2(f)(2)(ii), Income Tax Regs. The business meal exception of section 274(e)(1) is applicable to meals and beverages served in the taxpayer's home. Sec. 1.274-2(f)(2)(i)(b), Income Tax Regs.
*509 We think it clear that the dinners at home hosted by petitioners fall within the exception contained in section 274(e)(1). Mr. Howard testified that the purpose of inviting the business guests to his home was because his home was more conducive to the kind of discussions he wanted to stimulate than a public place would be, especially considering the fact that many of his guests were well known. By inviting a group of 8 to 10 people to his home, Mr. Howard had the opportunity during the course of the evening to talk with all of them and to discreetly inquire about subjects and ideas which were helpful to him in his business. The time and circumstances of the dinner as well as the individual and collective professional interests of the few guests invited make it clear that the infrequent business dinners (as opposed to the many social dinners for which no deduction was claimed) were "commercially rather than socially motivated," ( section 1.274-2(f)(2)(i)(b), Income Tax Regs), and were "for the primary purpose of furthering the taxpayer's trade or business and did not primarily serve a social or personal purpose." ( Sec. 1.274-2(f)(2)(i)(c), Income Tax Regs. *510 ) In this connection we found the testimony of Mr. Howard to be candid, credible, and helpful in relating the business purpose of these infrequent business dinners (as contrasted with the social dinners on other occasions) to the news business in which he engaged. [6] Because we find the expenses incurred by petitioners for those infrequent dinners arranged for business rather than social purposes fall within section 274(e)(1), we do not address the issue of whether absent that exception, the expenses meet the additional requirements of section 274(a). *511 Issue 3. Expenses Relating to Writing Activity
FINDINGS OF FACT Petitioner Eleanor Harris Howard ("Mrs. Howard") became a writer upon graduating from Stanford in 1936. After working as a writer for 20th Century Fox, Mrs. Howard moved to New York in 1939. Between 1939 and 1964 Mrs. Howard supported herself by writing profile articles of celebrities which were published in various magazines, and in addition, wrote and had published two books and a short story. Subsequent to her marriage to Mr. Howard in 1964, Mrs. Howard continued to write magazine articles, but started devoting more of her writing time to plays, which she sent to agents and producers. During the years in issue, Mrs. Howard spent 2 to 4 hours a day writing in her office, which measured 20 feet by 20 feet and was located on the first floor of the apartment building where petitioners had an apartment on the eighth floor. Mrs. Howard spent additional time outside of her office gathering information for articles, short stories, and plays. Mrs. Howard used the name Eleanor Harris for her articles, and kept a separate bank account in which she deposited income from her writing activities and from which *512 she paid expenses connected with her writing. For many years, Mrs. Howard has been a member of the American Society of Journalists and Authors, the Dramatists' Guild and Authors' Leagues, and the American Federation of Television and Radio Actors. For the years in issue, petitioners deducted expenses related to Mrs. Howard's writing activities such as rent for the writing room, electricity, office supplies, insurance, and dues to professional organizations, which exceeded income from her writing. OPINION Mrs. Howard has been a professional writer since graduation from college. During the years in issue, she wrote every morning in her small office, located on the first floor of the apartment building where petitioners lived on the eighth floor. She devoted most of her attention to writing plays. Respondent contends that petitioners are not allowed deductions for the excess of the expenses pertaining to Mrs. Howard's writing over the income derived therefrom because Mrs. Howard's writing was not engaged in for profit. Petitioners maintain that Mrs. Howard did write with the objective of making a profit. We agree with petitioners. *513 Section 183[7] disallows deductions attributable to an activity not engaged in for profit. However, deductions that would be allowable regardless of whether the activity was engaged in for profit are permitted. Additionally, to the extent that gross income from the activity exceeds all deductions, (including those allowed without regard to a profit motive), they are permitted. Section 183 was enacted to codify the distinction between a business and a hobby and to prohibit a taxpayer from obtaining a loss from an activity considered to be a hobby which was then used to offset other income. S. Rept. No. 91-552, 1969-3 C.B. 490. Although a reasonable expectation of profit is not required, in order to prevail, petitioners must show that Mrs. Howard pursued her writing career during the years in issue with the objective of making a profit. Sec. 1.183-2(a), Income Tax Regs.; Godfrey v. Commissioner, 335 F.2d 82, 84 (6th Cir. 1965); Churchman v. Commissioner, 68 T.C. 696, 701 (1977). *514 We think the record clearly shows that Mrs. Howard wrote with the objective of making a profit. In addition to Mrs. Howard's testimony, which we found to be candid and credible, there are other factors which point to a profit-making objective. Mrs. Howard has been a recognized professional writer for decades. She pursued her writing in a business-like manner, maintaining accurate and separate records, and marketing her finished products in accordance with the standards of the profession. Furthermore, she devoted a substantial amount of personal time and effort to her writing.See sec. 1.183-2(b), Income Tax Regs.
Respondent argues that the fact that Mrs. Howard was no longer dependent upon her writing to support herself and the fact that she sustained losses in excess of income during 8 of the 12 years between 1965 and 1976 indicate that her writing constituted a hobby. However, as we stated in a similar case: For section 183 purposes, it seems to us irrelevant whether petitioner intends to make a profit because it symbolizes success in her chosen career *515 or because it is the pathway to material wealth. [Churchman v. Commissioner, 68 T.C. 696, 703 (1977).] During the 1960's Mrs. Howard turned her attention and efforts from writing magazine articles to writing plays, which were much more difficult to write and to market. It is no surprising that for several of those years, she sustained small losses. No doubt the fact that she had other sources of income contributed to her ability to try her hand at something new. However, nothing in the record indicates that writing then became a hobby for her. Rather we find it clear from the testimony and from the objective evidence that for the years in issue, Mrs. Howard was a dedicated writer who desired success and recognition in her profession, and who intended to make a profit from her work. Issue 4. Miscellaneous Expenses
FINDINGS OF FACT For 1973 and 1974, petitioners deducted 15 percent of the cost of having a telephone in their apartment as a business expense. Mr. Howard often used the phone for business discussions with employees on the West Coast, which, due to the different time zones, took place after he returned to his home in the evening. Mrs. *516 Howard used the phone in connection with her writing activity. For 1973 and 1974, petitioners deducted the cost of travel, hotel, and registration fees for Mrs. Howard to accompany her husband to various conventions and meetings sponsored by the Inter-American Press Association and United Press International. Mr. Howard's expenses for attending these conventions were paid by Scripps. The Inter-American Press Association is an organization of editors and publishers of newspapers in the Western Hemisphere. The principal purpose of the organization is to preserve freedom of the press in the Western Hemisphere. Petitioners deducted expenses relating to a dinner they hosted on September 19, 1973, honoring Mrs. Wauhillau LaHay's becoming president of the Washington Press Club. Mrs. LaHay was the White House correspondent for Scripps who covered the activities of the First Lady. The guests at the dinner were prominent people in government who were sources of information for Mrs. LaHay, and key employees of Scripps. Petitioners deducted the cost of a luncheon at the Sky Club on January 10, 1973. Petitioner Jack Howard attended the luncheon with Mr. and Mrs. Hamilton Bissell. *517 Petitioners deducted the cost of a luncheon Mr. Howard hosted at the Sky Club on March 7, 1973. The luncheon was in honor of the 80th birthday of Mr. Lee B. Wood, a long time employee of Scripps and vice-president and trustee of The Scripps Howard Foundation and president of Scripps-Howard Investment Company. Present at the luncheon were key executives of Scripps. Petitioners deducted the cost of eight theatre tickets. Petitioners attended the theatre on March 15, 1973 with three individuals prominent in government and business, and their spouses. Petitioners deducted the cost of tickets to attend a dinner for the Earl of Cromer on December 6, 1973. Petitioners deducted the cost of three luncheons hosted at restaurants by Mrs. Howard on May 3, 1974; May 20, 1974; and May 29, 1974. At the May 3rd luncheon, Mrs. Howard's guests were two individuals prominent in the entertainment world who provided Mrs. Howard with information pertaining to an article she was writing. At the May 20th luncheon, Mrs. Howard's guest was the wife of the head of Music Corporation of America. At the May 29th luncheon, Mrs. Howard's guest was a successful playwright, who gave Mrs. Howard advice *518 on writing plays. In 1974, petitioners deducted the cost of flowers sent on four separate occasions. In 1974, petitioners deducted the cost of Mrs. Howard's attending a dinner given by the Iranian Ambassador in honor of Mrs. Wauhillau LaHay, president of the Washington Press Club and an employee of Scripps. Petitioner deducted the cost of Mrs. Howard's attending a meeting on December 20, 1974 of the Board of Governors for the Hoover Institute for War, Revolution and Peace. In 1974, petitioners deducted the full cost of two wedding gifts, both of which were in excess of $ 25 apiece. OPINION Petitioners deducted 15 percent of the cost of having a telephone in their apartment. Petitioners established that the phone was needed and used frequently in Mr. Howard's business as a communications executive and in Mrs. Howard's business as a professional writer. We find that 15 percent of the cost of the telephone qualifies as an ordinary and necessary business expense, deductible under section 162. Petitioners deducted the cost of Mrs. Howard's accompanying her husband to various conventions sponsored by the Inter-American Press Association and United Press International. *519 Although Mrs. Howard participated in some of the programs and although her presence may have been helpful to Mr. Howard's business, it is clear that the conventions were related solely to Mr. Howard's business as a communications executive, and that Mrs. Howard was there primarily because she wanted to accompany her husband on a trip. Such a desire is certainly reasonable, but it does not convert personal expenses into ordinary and necessary business expenditures under section 162. See Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 661 (1962). Therefore the deductions were properly disallowed. For 1973, petitioners deducted the expenses of a dinner in honor of a Scripps White House correspondent's becoming president of the Washington Press Club. The invited guests were key Scripp's employees and prominent people in government who were sources of information for the correspondent. In light of the corporate policy that Mr. Howard engage in some business promotion and entertainment at his own expense, we find that the cost of the dinner was an ordinary and necessary business expense, deductible under section 162. Furthermore we do not reach the issue *520 of whether the deduction would be disallowed under section 274(a) because we find that it falls within the exception to section 274(a) contained in section 274(e)(1) for business meals furnished under circumstances which are generally considered to be conducive to a business discussion. For 1973, petitioners deducted the cost of a luncheon that Mr. Howard attended with Mr. and Mrs. Hamilton Bissell. No evidence was presented as to how the luncheon or the guests were related to Mr. Howard's business, and therefore petitioners have failed to meet their burden of proving that the cost was an ordinary and necessary business expense deductible under section 162. See Rule 142(a), Tax Court Rules of Practice and Procedure.
For 1973, petitioners deducted the cost of a luncheon Mr. Howard hosted in honor of the 80th birthday of a long-time employee of Scripps who was then the vice-president and trustee of The Scripps-Howard Foundation and president of the Scripps-Investment Company. Key executives of Scripps were invited. In view of the many decades the employee had been with Scripps, we find that a luncheon to honor his 80th birthday was an appropriate and reasonable way to build *521 business morale and loyalty and qualifies as an ordinary and necessary expense deductible under section 162. Furthermore, we find that the deduction is not disallowed by section 274(a) because it falls within the exception to that section contained in section 274(e)(1) for business meals furnished under circumstances conducive to business discussions. For 1973, petitioners deducted the cost of eight theatre tickets. Under the regulations, attending a theatrical performance is considered a substantial distration which generally renders the expenditure not directly related to the active conduct of the taxpayer's trade or business. Sec. 1.274-2(c)(7), Income Tax Regs. Thus, unless the taxpayer can overcome this presumption, deductibility will be disallowed under section 274(a), regardless of whether the expense constituted an ordinary and necessary business expense deductible under section 162(a). In the instant case, petitioners did not show how attending the theatrical performance with their guests was directly related to the active conduct of Mr. Howard's business *522 within the meaning of section 274(a). Furthermore, since petitioners accompanied the recipients of the tickets to the theatre, the tickets must be considered as expenditures for entertainment, and not gifts. Sec. 1.274-2(b)(1)(iii), Income Tax Regs.
For 1973, petitioners deducted the cost of tickets to attend a dinner for the Earl of Cromer.No evidence was presented with respect to this deduction. Therefore petitioners have failed to meet their burden of proof on this issue. See Rule 142(a), Tax Court Rules of Practice and Procedure.
For 1974, petitioners deducted the cost of three luncheons hosted at restaurants by Mrs. Howard. Testimony revealed that guests at two of the luncheons--on May 3d and May 29--were individuals who provided Mrs. Howard with information and advice about articles and plays she was writing at the time. Therefore, we find the cost of these two luncheons to be deductible as ordinary and necessary business expenses under section 162. Furthermore, we find that the deductions are not disallowed under section 274(a) because the luncheons were directly related to the active conduct of Mrs. Howard's trade or business as a professional *523 writer, and the luncheons fall within the exception to section 274(a) contained in section 274(e)(1) for business meals. With respect to the May 20th Luncheon, no evidence was presented as to how the luncheon was connected to Mrs. Howard's writing, and therefore petitioners have failed to meet their burden of proving its cost to be an ordinary and necessary business expense deductible under section 162(a). See Rule 142(a), Tax Court Rules of Practice and Procedure.
In 1974, petitioners deducted the cost of flowers sent on four separate occasions. No evidence was presented with regard to this deduction, and therefore petitioners have failed to meet their burden of showing that the deduction was allowable. See Rule 142(a), Tax Court Rules of Practice and Procedure.
In 1974, petitioners deducted the cost of Mrs. Howard's attending a dinner given by the Iranian Ambassador in honor of the Scripps White House correspondent and the cost of Mrs. Howard's attending a meeting of the Board of Governors for the Hoover Institute for War, Revolution and Peace. No evidence was presented as to why these expenditures were ordinary and necessary to Mrs. Howard's profession as a writer, and therefore *524 petitioners failed to meet their burden of these issues. See Rule 142(a), Tax Court Rules of Practice and Procedure.
In 1974, petitioners deducted the full cost of wedding gifts. Respondent disallowed the deductions to the extent they exceeded $ 25 apiece. Under section 274(b), [8] no deduction is allowed under section 162 or 212 for expenses for gifts to the extent that the cost exceeds $ 25. Therefore respondent correctly disallowed the deductions for the two gifts to the extent the cost of each exceeded $ 25. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
*. The parties have stipulated the column amounts and totals. Expenses for the year 1973 sum to $ 4,645.16 rather than $ 4,635.21.↩
2. Because we find that the Bohemian Club dues and expenses do not meet the more stringent requirements of sec. 274, we do not decide the preliminary issue of whether the dues are deductible as ordinary and necessary business expenses under sec. 162↩.
3. Sec. 274(a) provides as follows: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) ENTERTAINMENT, AMUSEMENT, OR RECREATION. -- (1) IN GENERAL--No deduction otherwise available under this chapter shall be allowed for any item-- (A) ACTIVITY.--With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or (b) FACILITY.--With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business, and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business.↩
4. Sec. 162(a) provides in pertinent part: SEC. 162. TRADE OF BUSINESS EXPENSES. (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.↩
5. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (e) SPECIFIC EXCEPTIONS TO APPLICATION OF SUBSECTION (a).--Subsection (a) shall not apply to-- (1) BUSINESS MEALS.--Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion.↩
6. Given the breadth of Mr. Howard's business, it is not easy to draw the line between business and social relationships with great particularity.However, on the record before us the line has been fairly and honestly drawn, and we doubt respondent would have disallowed the deductions if the meals were held in a restaurant instead of petitioners' home. On the particular record before us, we do not find this to be sufficiently significant to change the result. Indeed, given the nature of Mr. Howard's business, an argument can be made that business dinners in his home are more in harmony with section 274(e)↩ then dinners in a restaurant would be.
7. The relevant part of sec. 183 provides as follows: SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) GENERAL RULE.--In the case of an activity engaged in by an individual or an electing small business corporation (as defined in section 1371(b)), if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section (b) DEDUCTIONS ALLOWABLE.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).↩
8. The relevant port of sec. 274(b) provides as follows: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (b) GIFTS.-- (1) LIMITATION.--No deduction shall be allowed under section 162 or section 212↩ for any expense for gifts made directly or indirectly to any individual to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the same taxable year, exceeds $ 25. * * *