HELEN KELLNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kellner v. Commissioner
Docket No. 1094-84.
United States Tax Court
T.C. Memo 1986-524; 1986 Tax Ct. Memo LEXIS 82; 52 T.C.M. (CCH) 875; T.C.M. (RIA) 86524; October 22, 1986. Helen Kellner, pro se. Arthur J. Gonzalez and Lawrence P. Blaskopf, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in petitioner's 1981 income taxes of $5,259.00 and, by amendment to answer, seeks damages pursuant to section 6673. [1]
*84 The issues for decision are: (1) Whether petitioner is entitled to deduct expenses claimed with respect to her theatrical activities, including those relating to an office in the home; (2) Whether petitioner is entitled to her claimed deductions for medical expenses, interest expenses, tax preparation fees, legal fees and investment fees; and (3) Whether petitioner is liable for damages pursuant to section 6673. For convenience, we combine our findings of fact and opinion and discuss each issue separately. Some of the facts have been stipulated and are so found. Petitioner's legal residence at the time of filing her petition was in New York City. Petitioner is a retired New York City school teacher. During the taxable year 1981 she received a pension from the New York City Teachers Retirement Fund in the amount of $15,467.54, interest income in the amount of $12,465.20, and dividend income in the amount of $920.76. Trade or Business
Petitioner's 1981 Federal income tax return lists her occupation as "actress." Petitioner reported expenses of $2,796.00 and gross income of $110.00 relating to her acting activities on Schedule C of her 1981 return. The expenses *85 reported by petitioner are as follows: Items
Amount Claimed
(a) Periodicals and books
$ 177.00
(b) Laundry and costume cleaning
45.00
(c) Postage
280.00
(d) Entertainment of possible clients,
400.00
agents, etc.
(e) Pay telephone
104.00
(f) Makeup
75.00
(g) Wigs
180.00
(h) Costumes
215.00
(i) Beautification, etc.
420.00
(j) Photos
95.00
(k) Resumes and Publicity
40.00
(l) Job hunting transportation
300.00
(m) Gifts to business associates
150.00
(n) Research
290.00
(o) Tapes and tape recorders
25.00
Total
$2,796.00
All of the Schedule C expense items, listed above, were disallowed by respondent in his statutory notice of deficiency.Respondent has agreed to allow $110.00 of the periodicals and book expenses, to the extent of the income reported. See sec. 183(b)(2). Therefore, the amount at issue is $2,686.00. Petitioner claimed $2,665.00 of employee business expenses on Form 2106 attached to her 1981 return, also relating to her acting, as follows: Ph. D. expenses - Tuition
$2,050.00
Telephone & Express mail & Telegrams
105.00
Books & Periodicals & Other Supplies
250.00
Typing & Other Clerical Services
260.00
Total
$2,665.00
*86 The educational expenses were attributed to acting and theatre courses taken at Columbia Pacific University, Mill Valley, Calif.
In his notice of deficiency, respondent disallowed the entire amount. Respondent agrees that petitioner incurred the following expenses but does not concede that these expenses are deductible: Tuition and Fees
$1,050.00
Transcripts
20.00
Other
40.00
Total
$1,110.00
Therefore, the amount at issue is the entire $2,665.00 of claimed employee business expenses. Petitioner began to act after she retired from teaching in 1976. In 1981 she played a role in the film "The Waitress" and was paid $30.00 for this performance. Though this film was not profitable for petitioner, she claims it was a very profitable film, being among the top 50 prossing films at an unspecified time. Petitioner offered in evidence a chart to support this claim which was photocopied from a trade publication and was cut and pasted. It is unclear whether "The Waitress" ranked 39th on the Top 50 grossing films chart, as this superimposed paper shows, or on some other chart. Petitioner also claims to have made a second film in 1981, "The Well." This film *87 was released in 1984, as was a third movie in which petitioner appeared, "American Junkyard." Petitioner did not film "American Junkyard" in 1981. The first issue to resolve is whether petitioner was in the trade or business of acting during the tax year 1981. If so, then we must examine the expenses individually to determine whether they are ordinary and necessary expenses under section 162 and whether they have been substantiated. Section 162 permits a deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The test for determining whether a taxpayer is carrying on a trade or business under section 162 is whether he or she is engaged in the activity with the primary purpose and intention of making a profit. Bessenyey v. Commissioner,379 F.2d 252, 256 (2d Cir. 1967), affg. 45 T.C. 261 (1965); Golanty v. Commissioner,72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Engdahl v. Commissioner,72 T.C. 659 (1979); Allen v. Commissioner,72 T.C. 28, 33 (1979). Alternatively, if *88 an activity is not engaged in for profit, section 183(a) provides "no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Section 183(b)(1) allows deductions which are already allowable without regard to whether or not such activity is engaged in for profit (e.g., taxes and interest). Section 183(b)(2) allows deductions which would be allowable if such activity were engaged in for profit, "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)." Petitioner does not have any section 183(b)(1) expenses in issue. Therefore, if petitioner is not engaged in acting for profit, she may only take deductions under section 183(b)(2) to the extent of $110, the gross income derived from acting. Section 183(c) defines an activity not engaged in for profit to include "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Dreicer v. Commissioner,78 T.C. 642, 643 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). *89 The determination whether an activity is engaged in for profit is made by reference to objective standards, taking into account all of the facts and circumstances of each case. Sec. 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,supra at 666; Allen v. Commissioner,supra at 34. A reasonable expectation of profit is not required, but the facts and circumstances must indicate that petitioner entered into the activity, or continued the activity, with a bona fide intention and objective of making a profit. Sec. 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,supra;Allen v. Commissioner,supra.It may be sufficient that there is small chance of making a large profit. Sec. 1.183-2(a), Income Tax Regs. Further, greater weight is given to objective facts than to petitioner's mere statement of her intent. Sec. 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,supra.
Section 1.183-2(b), Income Tax Regs., enumerates several factors that may be taken into account, including: (1) the manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer *90 or her advisors, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the taxpayer's history of income or loss with respect to the activity, (5) the amount of occasional profits, if any, which are earned, (6) the financial status of the taxpayer, and (7) elements of personal pleasure or recreation. This is a nonexclusive list of factors to be considered. Brannen v. Commissioner,722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982). Looking at each factor independently, it is a question of fact whether petitioner is in the acting trade or business. Allen v. Commissioner,supra at 34. First, whether petitioner carried on the activity in a businesslike manner is unclear. According to petitioner's testimony, she religiously bought the show business weekly publications, sent out ten solicitation letters a week, practiced her voice daily and worked harder to seek roles than she ever worked in teaching. This would tend to indicate that petitioner acted in a businesslike manner. However, the evidence offered by petitioner to corroborate her testimony is weak, and casts doubt on her credibility on *91 this point. Petitioner offered a 1978 pocket calendar into evidence, claiming it was a diary of her acting activities from 1978 through the present. The entries in the diary are names and addresses of persons to whom petitioner has sent resumes. The top of each page, possibly where a date was, has been cut off. Further, there are gaps in this diary where pages are blank. Respondent contends that the gaps, which occur in the diary on holidays and days in which petitioner was away on a trip, raise questions as to whether the diary actually was a continuous record of petitioner's acting activities from 1978 until the present or whether this is merely a diary of petitioner's activities in 1978. Respondent further contends that petitioner's manner in conducting her acting activities is disorganized and unbusinesslike as shown by the lack of documentation of these activities and the expenses she claims she incurred. We are inclined to agree with respondent here. Petitioner's expertise, the second factor, tends to indicate a profit motive. She is qualified as an actress, at least for small roles, as shown by the three films she was in. In 1981 she was listed with several talent *92 or casting agencies. However, petitioner did not have a manager, nor was she a member of an actor's guild. There is no physical evidence which bears on the third factor, the time and effort expended by petitioner in pursuit of her acting career. Petitioner claims she works harder at acting than she did at teaching. Standing alone this uncorroborated testimony is not sufficient to show that she expends a great deal of time in pursuit of an acting career. Moreover, by petitioner's own admission, she was often bedridden for long periods, not allowing her time to exploit her talents as fully as she would like. On brief, with respect to her medical expenses, petitioner states that "[a]lmost every year I am bedridden for months with the flu or pneumonia," and that she goes to a warm climate to be cured. This indicates that petitioner refrained from devoting a great deal of time and energy to her acting during the winter months, and there is no convincing evidence to indicate otherwise as to the rest of the year. The taxpayer's history of losses with respect to this activity, the fourth factor, also tends to show that petitioner does not have an actual profit objective.Petitioner *93 has sustained losses from acting from the year she first started, 1978, through at least 1984. The record indicates petitioner's claimed income and expenses for the year 1978, 1981, 1982, 1983 and 1984 were as follows: [2]
Income Reported
[3] Claimed Acting Expenses 1978
$275.00
$5,695.00
1981
110.00 8,316.50 1982
130.00 7,130.00 1983
375.00 1,440.00 1984
125.00 2,812.00 A record of substantial losses over many years and the unlikelihood of achieving a profitable operation are important factors bearing on the taxpayer's true intention. Golanty v. Commissioner,supra. In this case, it is clear that petitioner's expenses far exceeded her income from acting over a period of several years, and that a profitable operation would be unlikely. Theoretically, petitioner could be noticed in a film she is doing for no pay, and then, if noticed, could *94 earn more money acting. We do not dispute her testimony that actors must be dedicated and must constantly apply for small parts in films to gain recognition. They may make little money at first and then "make it big." Moreover, a taxpayer's profit expectation need not be a reasonable one; it is sufficient that the taxpayer has a bona fide objective of realizing a profit. Allen v. Commissioner,supra,Golanty v. Commissioner,supra.
However, the evidence indicates that "making it big" would be unlikely in petitioner's case. She has performed in a few films and may have gained some recognition, but she is not taking positive steps to increase her skills or chances for earning a profit. She does not have a manager to increase her chances of financial success, and does not take acting classes. It seems her ability is not increasing. Petitioner has sustained losses for seven years. With this dismal earnings record and her lack of further steps to increase her chances, it is difficult to accept petitioner's claim that she had an earnest profit motive in 1981. The fifth factor to be considered is the amount of occasional profit earned. *95 As indicated above, petitioner has earned no net profit from acting, although she has earned small amounts of income from her endeavors, before deducting her claimed expenses. The financial status of the taxpayer is also a factor to consider. Petitioner received $15,467.54 from her teaching retirement fund, $12,465.20 from interest and $920.76 in dividend income. Petitioner is certainly not dependent upon acting for her income. Substantial income from sources other than the activity may indicate that the activity is not engaged in for profit, especially if there are personal or recreational elements involved. Sec. 1.183-2(b)(8), Income Tax Regs. We are inclined to believe that such is the case here. Acting is a genuine interest and hobby of petitioner, which her other income leaves her the resources and time to pursue. Petitioner cites Howard v. Commissioner,T.C. Memo. 1981-250, as authority that the taxpayer need not be dependent upon the income from the activity for a finding of profit motive. We find Howard to be distinguishable from the facts at hand. Mrs. Howard was a professional writer since graduation from college; she had been recognized as *96 a professional writer for decades and pursued her writing in a businesslike manner, maintaining accurate and separate records. Howard v. Commissioner,supra, (41 T.C.M. 1554, 1559; 50 P-H Memo TC par. 81,250 at 81-863.) After marrying Mr. Howard, Mrs. Howard was no longer solely dependent upon her writing to support herself and could turn to more speculative writing projects. However, all the facts and circumstances indicated that Mrs. Howard's writing was no more a hobby after her marriage than before. In this case, petitioner has never supported herself, or even earned a profit, through acting. The presence of recreational or personal elements in carrying on an activity may indicate the activity is not engaged in for profit. Sec. 1.183-2(b)(9), Income Tax Regs. Yet, it is not necessary that an activity be engaged in with the exclusive intention of deriving a profit or with the intention of maximizing profits. Sec. 1.183-2(b)(9), Income Tax Regs.
Petitioner has always had a strong interest in acting. When she was teaching art, she had her students perform plays. She claims she has taken many acting courses though not in the 1981 taxable *97 year. However, she has failed to prove that these classes were for the purpose of establishing or furthering a career, as opposed to personal pleasure. The course taken in 1981, for which petitioner claimed a deduction on her return, was a correspondence course relating to aging actresses. Petitioner relies on Regan v. Commissioner,T.C. Memo. 1979-340 (finding the taxpayer was in the trade or business of acting). In Regan, however, the facts are quite different. Regan was a full-time engineer from 1974 through 1978. In 1978, he left his engineering job, not simply retired, to be a full-time actor. This Court found for Regan for three different reasons. First, the taxpayer proved he attended over seventy class sessions during the year in issue, ranging in duration up to 8 hours each. We found that such classes, and the 100 mile round trip commute to the classes, showed the taxpayer devoted a substantial enough amount of time to improving his acting skills to suggest a serious and studied effort. Second, the taxpayer proved he made substantial efforts to secure acting roles during the year in issue.Third, we found a dramatic increase in net income from *98 acting, which was further evidence of a serious intent to earn a profit. Regan was netting a profit from acting by the time of the trial. Here, petitioner has not shown she devoted the time and effort shown by the taxpayer in Regan. Further, her earnings are not steadily rising nor is she coming close to breaking even. On the other hand, petitioner's evidence does indicate substantial efforts to secure acting roles. Petitioner has contested her tax liability before the Tax Court on four prior occasions and is aware she has the burden of proof for expenses she has claimed. Kellner v. Commissioner,T.C. Memo. 1971-103, affd. per curiam 468 F.2d 627 (2d Cir. 1972); Kellner v. Commissioner,T.C. Memo. 1976-72, affd. 553 F.2d 93 (2d Cir. 1977); Kellner v. Commissioner,T.C. Memo. 1979-116; and Kellner v. Commissioner, docket No. 14950-82 unpublished, United States Tax Court Bench Opinion by Special Trial Judge Peter J. Panuthos, dated January 13, 1984. In each of those cases petitioner failed to carry her burden of proof. Based on all the evidence, we find petitioner did not have a profit motive. *99 Rather, we find petitioner acted as a hobby, or for other nonfinancial reasons. Since petitioner did not have a profit motive, she is not in acting as a trade or business. Therefore, petitioner is permitted to deduct only $110.00 of her acting expenses, an amount not in excess of the income received from this activity. Further, since she is not in a trade or business she may not deduct the expenses of a home office.Because of our finding, we need not reach the issue of whether petitioner substantiated her business and home office expenses. Medical Expenses
Petitioner claimed medical and dental expenses of $6,472.00 ($1,490.00 medicine and drugs and $4,982.00 other medical and dental) before the application of the one percent and three percent limitations, respectively. In his notice of deficiency, respondent disallowed the entire amount. After documentation and application of the Cohan rule (see Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930)), respondent has now conceded $1,535.79.The expenses claimed by petitioner are as follows: Amt.
Medicine and Drugs
Amt. Claimed
[4] Amt. Allowed At Issue
1. Special preparations
$360
$36
$324
2. Vitamins, special food,
750
750
etc.
3. Other drugs and medicine
380
[5] 50
330
Totals
$1,490
$86
$1,404
*100 Other Medical and Dental Expenses
Amt.
Amt. Claimed
[6] Amt. Allowed At Issue
1.Cancer treatments
Dr. Kopt
$155   Dr. Ackerman
25   Dr. Perry
Subtotal
$1,625
180   $1,445   2. Cataract treatments
Dr. L Espirance
Dr. Rubin
90   Books on cataracts
95   Subtotal
405
185   220   3. Orthopedic appliances,
85.19
molds, etc.
[7] 200.00
Subtotal
850
285.19
564.81
4. Dr. Bronson
170.00
Dr. Zethelus
95.00
Dr. Mecz
15.00
Dr. Rubin
25.00
Dr. Reiss
195.00
Dr. Jellineck
50.00
Dr. Wernor
15.00
Dr. Daugherty
20.00
Dr. Maxwell
Lenox Hill Hospital
73.60
New York Hospital
36.50
Project Relief
5.00
Subtotal
732
699.60
32.40
5. Eyeglasses
95
95.00
6. Dental hygiene machine
70
70.00
7. Humidifier and its
electricity
75
75.00
8. Elastic stockings
400
400.00
9. Transportation to doctors
350
[8] 100.00
250.00
10. Railroad transportation
320
320.00
11. Transportation to hay
fever relief
60
60.00
Subtotal for other medical
$4,982
$1,449.79
$3,532.21
and dental expenses
Totals-All Medical Claims
$6,472
$1,535.79
$4,936.21
*101 Other than her vague, generalized testimony, petitioner presented no evidence at trial to substantiate any of the amounts in dispute.In addition to the $1,535.79 permitted as a deduction by respondent, we allow petitioner an additional $100 deduction for the elastic stockings, humidifier, dental hygiene machine and eyeglasses. See Cohan v. Commissioner,supra.
Interest Expense
Petitioner claimed an interest expense of $2,944.73, allegedly representing accumulated interest on past taxes. Respondent disallowed the entire amount in the notice of deficiency. Prior to trial petitioner substantiated interest payments of $2,296.41. Respondent has conceded this amount. No substantiation was presented for the remaining $648.32. We find that only $2,296.41, the substantiated amount, is deductible as interest paid in 1981. Miscellaneous Deductions
Petitioner claimed *102 deductions for tax return preparation fee, seminars, and books of $150.00; legal expenses and fees for accountants on tax matters of $720.00; and investment expenses, publications and lectures of $370.00. All of these expenses were disallowed by respondent in the notice of deficiency. Petitioner offered no evidence to substantiate these claims. Therefore, we uphold the disallowance of these miscellaneous deductions. Damages
Respondent has requested damages in this case pursuant to section 6673. Respondent supports his claim by pointing out that this is petitioner's fifth time before this Court and that each time the problem remains the same - that petitioner simply refuses, year after year, to present records in an orderly fashion. In this case, a prime point of contention was the essentially factual determination regarding whether petitioner was in the trade or business of acting. After an examination of the facts, we found she was not. Petitioner, however, had some evidence and authority which arguably supported her position. We find that petitioner's position in this proceeding is not frivolous and groundless, nor were these proceedings instituted by her primarily *103 for delay. We therefore decline to award damages. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Although the amounts of acting income and expenses reported in 1979 and 1980 are not in evidence, petitioner testified that she did not earn a profit from acting in these years. ↩
3. Includes claimed Schedule C expenses, home office, and employee business expenses.↩
4. Unless otherwise indicated, checks or receipts have been submitted to verify the amount. ↩
5. Respondent conceded this item based upon information provided after issuance of the notice of deficiency and application of the Cohan↩ rule. 6. See n. 4. ↩
7. See n. 5. ↩
8. See n. 5.↩