**E. W. BROWN, Jr. and Elizabeth S. Brown, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 29208.

United States Court of Appeals, Fifth Circuit.

Nov. 3, 1970.

---

* Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5th Cir. 1970, 431 F.2d 409.

1. See NLRB v. Amalgamated Clothing Workers of America, 5 Cir. 1970, 430 F.2d 966.

Jerry A. Wells, Atty., Tax Division, U. S. Department of Justice, Fort Worth, Tex., Johnnie M. Walters, Asst. Atty. Gen., Fred B. Ugast, Acting Asst. Atty. Gen., Lee A. Jackson, Atty., Tax Div. U. S. Dept. of Justice, Washington, D. C., A. Roby Harden, U. S. Atty., Tyler, Tex., Daniel B. Rosenbaum, William A. Friedlander, Attys., Dept. of Justice, Washington, D. C., for defendant-appellant.

Tanner T. Hunt, Jr., Peter Wells, Wells, Duncan, Beard, Greenberg & Hunt, Beaumont, Tex., for plaintiffs-appellees E. W. Brown, Jr. and Elizabeth S. Brown.

Before GEWIN, MORGAN and ADAMS *, Circuit Judges.

MORGAN, Circuit Judge:

The single question on this appeal by the government is whether the district court erred in holding that ad valorem property taxes attributable to income-producing properties need be deducted from gross income to arrive at adjusted gross income. We hold that the government's position should have been sustained and reverse.

The taxpayers, E. W. Brown, Jr., and Elizabeth S. Brown, husband and wife, filed a joint federal income tax return for the calendar year 1962. On their return, they deducted the sum of $52,942.-50 in ad valorem property taxes attributable to business and income-producing property, and paid by them during the taxable year. The deduction, however, was not taken from gross income in computing adjusted gross income. Instead, taxpayers computed their adjusted gross income and then deducted these expenses therefrom in arriving at taxable income. As a result, taxpayers' adjusted gross income was increased by $52,942.50, permitting them additional charitable contributions deduction equal to 30 percent of this increased amount (30% of adjusted gross income being the statutory limitation on deductions for charitable contributions to certain types of charitable organizations).

Section 62 of the Internal Revenue Code of 1954 [1] requires individual taxpayers to compute an amount called "adjusted gross income" as an interim step in arriving at taxable income. Adjusted gross income is defined as gross income minus:

> The *deductions allowed by this chapter* [Chapter 1 of the Code, i. e., Sections 1–1388] (other than by part VII of this subchapter) *which are attributable to a trade or business carried on by the taxpayer* * * * (Emphasis added.)

It is apparent that the ad valorem property taxes, whether deductible under Section 162 [2] of the Internal Revenue Code of 1954, as ordinary and necessary business expenses, or under Section 164 [3] of the Internal Revenue Code

---

* Of the Third Circuit, sitting by designation.

1. Section 62, Int.Rev.Code of 1954:
SEC. 62. *Adjusted gross income defined.*
For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:
(1) *Trade and Business deductions.*— The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.
* * * * *

2. Section 162, Int.Rev.Code of 1954:
SEC. 162. *Trade or business expenses.*
(a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
* * * * *

3. Section 164, Int.Rev.Code of 1954:
SEC. 164. *Taxes.*
(a) *General Rule.*—Except as otherwise provided in this section, the following

of 1954, which specifically provides for the deduction of taxes, are deductions allowed by Chapter I of the Code. Thus, under the clear and unambiguous mandate of Section 62, taxpayers were required to deduct their ad valorem property taxes from gross income to arrive at adjusted gross income.

We feel that the statute supports this position; however, we invite consideration of the legislative history as well, which shows precisely why the statute makes the above requirement. The concept of "adjusted gross income" was introduced into Section 22[4] of the 1939 Internal Revenue Code by Section 8, Individual Income Tax Act of 1944, c. 210, 58 Stat. 231. Prior to this, taxpayers merely deducted all allowable items from gross income to arrive at taxable income.[5] The charitable deductions limitation, which was then 15 percent, was limited to 15 percent of taxable income computed without the benefit of this deduction. In addition, the optional standard deduction did not exist. S.Rep.No. 885, 78th Cong., 2d Sess., pp. 24–25 (1944 Cum.Bull. 858, 877–878).

The concept of "adjusted gross income" was conceived for the purpose of placing taxpayers with different types of income from varying sources in a position of substantial parity. (S.Rep.No. 885, supra), so that the standard deduction (which provides for a reasonable allowance for personal non-business deductions), also introduced into the Code at the same time, and the percentage limitations on medical deductions and char-

itable contributions could be applied to an equitably comparable income base, which, in the case of each taxpayer, would represent net income from his gainful activity—whatever that was. H. Rep.No. 1365, 78th Cong., 2d Sess., p. 19 (1944 Cum.Bull. 831, 836). As the Senate Finance Committee noted (S.Rep. No. 885, supra, pp. 877–878):

For example, in the case of an individual merchant or store proprietor, gross income under the law is gross receipts less the cost of goods sold; it is necessary to reduce this amount by the amount of business expenses before it becomes comparable for the purposes of such a tax table or the standard deduction, to the salary or wages of an employee in the usual case. Similarly, the gross income derived from rents and royalties is reduced by the deductions attributable thereto (as defined in clause (4)) in order that the resulting adjusted gross income will be on a parity with the income from interest and dividends in respect of which latter items no deductions are permitted in computing adjusted gross income.

The deductions described in clause (1) above are limited to those which fall within the category of expenses directly incurred in the carrying on of a trade or business. The connection contemplated by the statute is a direct one rather than a remote one. *For example property taxes paid or incurred on real property used in the trade or business will be deductible*, whereas

---

taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

    (1) State and local, and foreign, real property taxes.

    \*    \*    \*    \*    \*

4. Section 22(n) (4). Int.Rev.Code of 1939: SEC. 22(n). *Definition of "adjusted gross income"*.—As used in this chapter the term "adjusted gross income" means the gross income minus—

    (1) *Trade and Business Deductions.* —The deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer, if

such trade or business does not consist of the performance of services by the taxpayer as an employee;

    \*    \*    \*    \*    \*

    (4) *Deductions Attributable to Rents and Royalties.*—The deductions (other than those provided in paragraph (1), (5), or (6)) allowed by section 23 which are attributable to property held for the production of rents or royalties;

    \*    \*    \*    \*    \*

5. Under the 1939 Code (Sec. 21), the term "net income" was used to refer to the concept presently referred to as "taxable income".

State income taxes, incurred on business profits, would clearly not be deductible for the purpose of computing adjusted gross income.

\* \* \* \* \* \*

Subsection (6) of this section contains an amendment to section 23(*o*) of the Code, relating to the deduction for charitable contributions. This section is amended to allow as a deduction from gross income charitable contributions of an individual to the extent that the amount of such contributions *does not exceed 15 percent of the taxpayer's adjusted gross income* rather than 15 percent of the taxpayer's net income computed without the benefit of the deduction.[6]

We feel that taxpayers' position conflicts not only with the express language of the statute but with the above statement of legislative purpose. In essence, the taxpayers computed an adjusted gross income for themselves which was not on a parity with adjusted gross incomes of wage earners. It was necessarily greater because it did not include all the expenses attributable to their trade or business, i. e., $52,942.50 in ad valorem property taxes. As result, the 30 percent charitable contributions deduction limitation was not applied to the income base contemplated by the Committee Reports and by the statute, and taxpayers are claiming a charitable contributions deduction which is greater by $15,882.75 (30 percent of $52,942.50) than that available to a non-business taxpayer with exactly the same actual income.

Although neither counsel cites the case, we feel that the case of Koshland v. Commissioner of Internal Revenue, 19 T.C. 860, affirmed and opinion adopted in 216 F.2d 751 (9 Cir., 1954), is relevant to the case at hand. In *Koshland* the question to be decided was whether *interest* on realty purchase money notes should be deducted from gross income in computing adjusted gross income as a deduction which is attributable to property held for the production of rents under Section 22(n) (4) as the government had determined. The taxpayer there contended that the interest payments did not come within the scope of subsection (4) of Section 22(n) and that the government had improperly reduced the amount of taxpayer's adjusted gross income; and that, as a result, the amount of deduction for charitable contributions in each year had been incorrectly determined. In determining that the interest in question comes within subsection (4) of Section 22(n), the court held:

"Our attention has not been directed to any accounting practice or rule which would treat the interest in question in any way other than a general expense of carrying the rental property, the interests in the property having been acquired with the proceeds of the loans evidenced by the notes, just as the property taxes on the rental property are treated as a direct expense of carrying the property, a point not in dispute which the petitioner apparently concedes. Since the notes on which the interest is paid were in fact purchase money notes, it is proper accounting practice according to our understanding to treat the interest on the notes as an expense of the rental property. Accordingly the interest squarely comes within the scope of section 22(n) (4)."

The clear and express language of the statute, together with the legislative history of legislative purpose sustains the government's position, and the district court is

Reversed.

6. These reports were cited by this court with approval in United States v. Wharton, 5 Cir., 1953, 207 F.2d 526, where the court showed its understanding of the concept of "adjusted gross income" to be in accord with such reports.