T.C. Memo. 1997-205


UNITED STATES TAX COURT


LEE D. AND MARJORIE L. HUSTEAD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4905-95.                    Filed May 5, 1997.


Lee D. Hustead, pro se.

<u>George Curran</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


TANNENWALD, <u>Judge</u>:  Respondent determined the following
deficiencies in petitioners' Federal income tax:

| Year | Amount |
|------|--------|
| 1991 | $7,532 |
| 1992 | 6,226  |

After concessions by respondent,[1] the issue for decision is whether petitioners' Schedule C expenses are deductible as current business expenses or must be treated as capital expenditures.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Norristown, Pennsylvania, at the time they filed their petition in this case.

Petitioners' Activities

During the taxable years 1991 and 1992, petitioners were engaged in an unincorporated business entitled LM Development. Petitioners started LM Development in 1987. Petitioners' business is to purchase undeveloped land with low density zoning and challenge unconstitutional and unlawful land practices by government entities, thereby achieving appreciation in the value of land assets owned or under contract.

Prior to March 1, 1992, petitioner Lee D. Hustead (Mr. Hustead) was employed as an engineer at General Electric. Mr. Hustead retired from General Electric on March 1, 1992, and

---

[1] Respondent concedes that mortgage interest expenses of $9,504.89 and $7,366.99 are deductible by petitioners on their Schedules A for the taxable years 1991 and 1992, respectively. Respondent also concedes $141 of insurance expenses for each year as a Schedule A deduction.

continues to work in the operation of LM Development.  Petitioner Marjorie L. Hustead was employed as a registered nurse.

Petitioners purchased undeveloped land located in Skippack Township, Pennsylvania (two lots in 1977 and one lot in 1987). At the times of purchase, the land was zoned "R1", which allowed only one residential dwelling per acre.

Petitioners' selected the land because:

a.    Petitioners believed Skippack Township was practicing zoning (a delegated police power) that was unconstitutional.

b.    Petitioners believed the land's situation and characteristics were ideal to sustain a constitutional challenge.

c.    Petitioners found this land significantly undervalued with respect to its worth with even partial recovery of what the petitioners believed to be its full value under constitutional zoning.

d.    Petitioners determined that this land was a superior buy with respect to all other land opportunities (townships and land), analyzed for all of their criteria.

Petitioners intended to retain the land in its undeveloped state and to challenge the constitutionality of Skippack Township's zoning ordinance and obtain a change in zoning which would allow more residential dwellings per acre.  After obtaining such a change, petitioners intended to sell the land to builders at a profit.  The receipt of capital gains from its sale is the only means by which petitioners intend to earn income on the undeveloped land.

From 1987 to 1993, petitioners engaged in various activities to obtain a zoning change. Petitioners' efforts were first reflected in litigation challenging the constitutionality of the Skippack Township zoning provisions. These efforts were initially unsuccessful, but petitioners filed an appeal. In 1991, by reason of a settlement offer and stipulation, petitioners' efforts were thereafter directed to achieving an amicable disposition of their claims which would result in an acceptable change in the zoning.

On October 23, 1991, Skippack Township adopted a new comprehensive land use plan. The new plan increased, from 80 to 337, the number of acres of land in Skippack Township designated for housing at four dwellings per acre (Village Residential). During 1991 and 1992, petitioners worked with Skippack Township with respect to the development, review, and enactment of a new zoning ordinance which included petitioners' land.

On May 23, 1993, the Board of Supervisors voted to change the zoning ordinance as applied to petitioners' undeveloped land and approximately 217 more acres. This change allowed petitioners' undeveloped land to be developed as Village Residential, i.e., four residential units per acre.

Petitioners' Expenses and Federal Income Tax Returns

Petitioners capitalized the startup costs for LM Development including the cost of acquiring the undeveloped land in 1977 and 1987.

During the years at issue, petitioners paid professional fees to a land use planning firm and engineers for services such as review of the land use plan, a wetlands survey, and evaluation of sewerability. Petitioners also paid for legal assistance in their zoning appeal and in negotiating the stipulation. Other expenditures included payment for repair of a broken floppy disk drive on petitioners' computer and for typing services. Petitioners used their computer for word processing, to keep business records, and to prepare their tax returns. In 1992, petitioners used the services of a tax accountant and a tax lawyer to review their records.[2]

Petitioners timely filed U.S. Individual Income Tax Returns for the taxable years 1991 and 1992. They claimed deductions for LM Development's 1991 and 1992 business activities on Schedules C as follows:

---

[2] Petitioner Lee Hustead so testified without specifying the amount paid, which on brief petitioners listed as $650.

| Schedule C Expense | 1991 | 1992 |
|---|---|---|
| Commissions[1] | $3,239.75 | $1,231.90 |
| Legal & professional service | 4,800.00 | 4,111.59 |
| Office | 3,759.65 | 3,798.43 |
| Repairs | 295.74 | - 0 - |
| Supplies | 630.88 | - 0 - |
| Taxes | 1,793.94 | 2,008.31 |
| Travel | 315.00 | 310.35 |
| Utilities | 253.93 | 302.70 |
| Other expenses | 957.93 | 389.31 |
| Depreciation | 1,735.18 | 2,776.28 |
| Insurance | 141.00 | 141.00 |
| Interest | 9,504.89 | 7,366.99 |
| TOTAL | 27,428.54 | 22,436.86 |

[1] These represent fees paid to Skippack Township as costs for the public hearings.

All of the above expenses were incurred attendant to petitioners' business as LM Development and, with one exception, see infra pp. 11-12, were directly related to petitioners' attempt to improve the value of the land.

Respondent's Determinations

Respondent issued the notices of deficiency for the taxable years 1991 and 1992 on January 6, 1995.  The adjustments to income were as follows:

| Item | 1991 | 1992 |
|---|---|---|
| All Schedule C expenses | $27,428 | $22,437 |
| Self-employment Tax deductions | (8) | (42) |
| Itemized deductions | (1,309) | (870) |

Previous Litigation

Hustead v. Commissioner, T.C. Memo. 1994-374, concerned the deductibility of petitioners' Schedule C expenses for LM

Development for the taxable years 1989 and 1990. The petition therein was filed with the Court on September 11, 1992. The Court in its opinion, filed August 8, 1994, agreed with respondent that the disputed expenses were to be capitalized. The Court of Appeals for the Third Circuit, without published opinion, affirmed this Court's decision on June 28, 1995. Hustead v. Commissioner, 61 F.3d 895 (3d Cir. 1995).

OPINION

The issue in this case is whether petitioners' 1991 and 1992 Schedule C expenses can be deducted as current business expenses or whether they constitute capital expenditures. The amounts or business purpose of the claimed expenses are not in dispute.

Although the parties have stipulated that the above is the only issue for decision, petitioners on brief continue to assert that "respondent's failure to cite any basis in law (reference to an IRC section) acts to deprive taxpayers of a fair trial and due process of law." Petitioners request that the burden of proof be upon respondent as a sanction for such failure.

The notices of deficiency indicated that respondent had disallowed all Schedule C expenses for both 1991 and 1992. This clearly advised petitioners of the basis for the deficiencies. The Court's opinion in the earlier case, which addressed the same issue, was issued prior to the mailing of the notices involved

herein.  Petitioners cannot claim surprise or ignorance as to the basis for the determinations.

Under the circumstances herein, we reject petitioners' request noting that, in any event, we can dispose of the case on the merits based on the undisputed facts with the result that the location of the burden of proof becomes irrelevant.

Section 162(a)[3] allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  However, section 263(a)(1) provides that "No deduction shall be allowed for * * * any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."

The parties have stipulated that the activities of LM Development constituted a "business", but that is not determinative of deductibility.  As the Court of Appeals for the Ninth Circuit stated in Madden v. Commissioner, 514 F.2d 1149, 1150 (9th Cir. 1975), revg. and remanding 57 T.C. 513 (1972)[4]:

> The statutes involved in this appeal are relatively clear.  Sections 162 and 212 allow a taxpayer to deduct many current expenses from ordinary

---

[3]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[4]  Madden and its rationale were specifically accepted by this Court in Soelling v. Commissioner, 70 T.C. 1052, 1055-1056 (1978).

income if they are related to business or profit-
seeking activity.  Once that nexus is established,
however, the taxpayer still cannot be sure of deducting
the expenses.  Rather, an additional question must be
answered:  Are the expenses "capital" in nature under §
263?  If they are capital, they cannot be deducted as
business expense.  [Citations omitted.]

Whether an expenditure may be deducted or must be
capitalized is a question of fact.  INDOPCO, Inc. v.
Commissioner, 503 U.S. 79, 86 (1992); A. E. Staley Manufacturing
Co. v. Commissioner, 105 T.C. 166, 193 (1995).

Petitioners characterize some phases of their land
development activities as lobbying, citing section 162(e), or
marketing.  In this context, they seek to distinguish the
situation involved in the earlier years and disposed of in
Hustead v. Commissioner, T.C. Memo. 1994-374, on the basis that
those years involved litigation activities whereas negotiating
activities were the focus in the years involved herein.  We think
this is a distinction without a difference.  In any event,
petitioners' characterizations are not determinative of
deductibility.  The question remains what is the origin or nature
of the transaction out of which the expenses arose.  Petitioners
refer to some expenses as those of being in business, e.g.,
office supplies, alleging that respondent has disallowed these
expenses on a theory of guilt by association.  Again, the same
analysis governs these expenses.  It is not the nature of the
item paid for, but the nature of the transaction giving rise to

that expense.  A. E. Staley Manufacturing Co. v. Commissioner,
supra at 195.

Petitioners contend that their land development activities
did not change the physical characteristics of the land itself
nor did they affect title and that, therefore, there were no
"improvements or betterments" to the land.  Petitioners also
maintain that they did not have a vested interest in the zoning
change during the years at issue and would not acquire such an
interest until a land-use permit was granted; consequently, they
argue, their activities did not lead to a "permanent" change
during the years at issue, which, as petitioners interpret
section 263(a)(1), is required for capitalization.

While physical alterations, e.g., construction, or actions
affecting title, may be sufficient conditions to classify an
expense as capital, they are not necessary conditions.  INDOPCO,
Inc. v. Commissioner, supra at 86-87; Commissioner v. Lincoln
Savings & Loan Association, 403 U.S. 345, 358 (1971) ("§ 263 does
not provide a complete list of nondeductible expenditures").  Nor
does section 263(a)(1) require that the change for which the
funds were expended be completed or vested within a specific tax
year for that change to be permanent within the meaning of that
section.

The foregoing principles have been applied in a number of
cases where expenditures in efforts to obtain changes in land
zoning have been required to be capitalized.  Godfrey v.

Commissioner, 335 F.2d 82, 84-85 (6th Cir. 1964) (where the efforts were unsuccessful but the expenditures were held not to be deductible, the court stating: "The purpose of the expenditure was to create a permanent benefit. The fact that it created neither a permanent nor exhaustible benefit does not change its character."); Soelling v. Commissioner, 70 T.C. 1052, 1055-1056 (1978); Galt v. Commissioner, 19 T.C. 892, 910 (1953), affd. in part and modified on other issues 216 F.2d 41 (7th Cir. 1954).[5]

Most of petitioners' disputed Schedule C expenses, including office supplies and depreciation of their computer, arose out of their activities to change the zoning and enhance the value of their undeveloped land. The very purpose of their business was to conduct these activities. Indeed, petitioners stipulated without qualification that "The expenses [Schedule C] were directly related to petitioners' attempts to improve the value of the land." The benefit to petitioners' land from rezoning is one which inures beyond the year of the expenditures. Income will be realized from petitioners' activities when, and not until, the property is sold. Capitalization of petitioners' Schedule C expenses leads to a closer matching of expenses with income. See INDOPCO, Inc. v. Commissioner, supra at 84, where the Supreme Court emphasized the importance of such matching principle.

---

[5] See also Davis v. Commissioner, T.C. Memo. 1983-160; Ackerman Buick, Inc. v. Commissioner, T.C. Memo. 1973-224.

In sum, we are satisfied, as we were in the earlier case, that petitioners' Schedule C expenses, with one exception, are not currently deductible and must be capitalized.

The exception relates to State and local real property taxes of $1,793.94 and $2,008.31 which petitioners paid in the taxable years 1991 and 1992, respectively. The obligation to pay these taxes arose out of mere ownership of the undeveloped land, not out of petitioners' rezoning activities. We hold that these taxes are deductible under section 164(a).[6]

To implement our holdings and respondent's concessions,

Decision will be entered

under Rule 155.

---

[6] Respondent has made no claim that these taxes should be capitalized under sec. 263A, an issue that was involved in the earlier case. Since it is undisputed that they relate to petitioners' "business", they constitute a Schedule C deduction and will be taken into account in computing "adjusted gross income" for purposes of the 2-percent limitation on itemized deductions. See Brown v. United States, 434 F.2d 1065 (5th Cir. 1970); sec. 1.62-1T, Temporary Income Tax Regs., 53 Fed. Reg. 9870 (March 28, 1988).